FILED

IN THE UNITED STATES DISTRICT COURT FOR THE
MIDDLE DISTRICT OF FLORIDA
ORLANDO DIVISION

2018 DEC 17 PM 3: 32

| | |
|---|---|
| UNITED STATES OF AMERICA, | ) |
| | ) |
| Plaintiff, | ) |
| | ) |
| v. | ) |
| | ) |
| EROTIDA HARDEN; MICHAEL HARDEN; | ) |
| AIDA CORTES; YAHAIRA CLAUDIO; | ) |
| TAMIKA ROBENSON; NATASHA WILLIAMS; | ) |
| and CERTIFIED TAXES, LLC, | ) |
| | ) |
| Defendants. | ) |

Civil No. 6: 18-cv-2148-ORL-41-DCI

**COMPLAINT FOR PERMANENT INJUNCTION AND OTHER RELIEF**

The United States of America, for its complaint against Erotida Harden, Michael Harden,

Aida Cortes, Yahaira Claudio, Tamika Robenson, Natasha Williams, and Certified Taxes, LLC,

alleges the following:

1.      This is a civil action brought by the United States under 26 U.S.C. §§ 7402, 7407,

and 7408 to enjoin Erotida Harden, Michael Harden, Aida Cortes, Yahaira Claudio, Tamika

Robenson, Natasha Williams, and Certified Taxes, LLC, and anyone in active concert or

participation with them, from:

> a.   acting as federal tax return preparers or requesting, assisting in, or
>      directing the preparation or filing of federal tax returns, amended
>      returns, or other related documents or forms for any person or entity
>      other than themselves;
>
> b.   preparing or assisting in preparing federal tax returns that they know
>      or reasonably should know would result in an understatement of tax
>      liability or the overstatement of federal tax refund(s) as penalized by
>      26 U.S.C. § 6694;
>
> c.   owning, operating, managing, working in, investing in, providing
>      capital or loans to, receiving fees or remuneration from, controlling,

1

licensing, consulting with, or franchising a tax return preparation business;

d.  training, instructing, teaching, and creating or providing cheat sheets, memoranda, directions, instructions, or manuals, pertaining to the preparation of federal tax returns;

e.  maintaining, assigning, holding, using, or obtaining a Preparer Tax Identification Number (PTIN) or an Electronic Filing Identification Number (EFIN);

f.  engaging in any other activity subject to penalty under 26 U.S.C. §§ 6694, 6695, 6701, or any other penalty provision in the Internal Revenue Code; and

g.  engaging in any conduct that substantially interferes with the proper administration and enforcement of the internal revenue laws.

This action also seeks, under 26 U.S.C. § 7402, an order requiring Erotida Harden, Michael Harden, Aida Cortes, Yahaira Claudio, Tamika Robenson, Natasha Williams, and Certified Taxes, LLC to disgorge to the United States the gross receipts that Erotida Harden, Michael Harden, Aida Cortes, Yahaira Claudio, Tamika Robenson, Natasha Williams, and Certified Taxes, LLC received (in the form of tax preparation fees) for the preparation of federal tax returns.

## Authorization

2.    This action has been requested and authorized by the Chief Counsel of the Internal Revenue Service, a delegate of the Secretary of the Treasury, and commenced at the direction of a delegate of the Attorney General of the United States, pursuant to 26 U.S.C. §§ 7402, 7407, and 7408.

## Jurisdiction and Venue

3.    Jurisdiction is conferred on this Court by 28 U.S.C. §§ 1340 and 1345 and 26 U.S.C. § 7402(a).

2

4.      Venue is proper in this Court under 28 U.S.C. § 1391(b)(1) because the Defendants reside in this judicial district and a substantial part of the activities giving rise to this suit occurred in this judicial district.

## Defendants

5.      Erotida Harden resides in Poinciana, Florida.  Erotida Harden has been preparing tax returns for compensation since at least 2010.

6.      Michael Harden resides in Orlando, Florida. Michael Harden has been preparing tax returns for compensation since at least 2013.  Michael Harden has been preparing tax returns at Certified Taxes since at least 2016.

7.      Aida Cortes resides in Kissimmee, Florida. Aida Cortes has been preparing tax returns for compensation since at least 2013.

8.      Yahaira Claudio resides in Orlando, Florida. Yahaira Claudio has been preparing tax returns for compensation since at least 2013. Claudio has been preparing tax returns at Certified Taxes since at least 2016.

9.      Tamika Robenson resides in Orlando, Florida. Tamika Robenson has been preparing tax returns for compensation at Certified Taxes since at least 2017.

10.     Natasha Williams resides in Orlando, Florida. Natasha Williams has been preparing tax returns for compensation at Certified Taxes since at least 2016.

11.     Certified Taxes, LLC is a tax preparation business in Florida doing business under the name Certified Taxes.  On or about September 29, 2015, Erotida Harden incorporated Certified Taxes, LLC in Florida.  Erotida Harden is the "Owner/CEO" and Cortes is the "Manager" of Certified Taxes, LLC.  Erotida Harden serves as the registered agent of Certified Taxes, LLC.

3

12.     In 2018, Erotida Harden and Aida Cortes, individually or through Certified Taxes, LLC, operated two tax preparation stores located at 1244 North Pine Hills Road and 5675 La Costa Drive in Orlando, Florida.

13.     Erotida Harden, Michael Harden, Aida Cortes, Yahaira Claudio, Tamika Robenson, and Natasha Williams prepare tax returns for compensation. In addition to personally preparing tax returns for compensation, Erotida Harden and Aida Cortes, as the owners of Certified Taxes, LLC, employ individuals (directly or through this entity) who prepare tax returns for compensation.

## Background

14.     LBS Tax Services ("LBS") began in 2008 as a tax return preparation business in Orlando, Florida operated by Walner Gachette. In 2011, Gachette began franchising the LBS name through Loan Buy Sell, Inc., a corporation organized in the State of Florida, to his employees in order to broaden his revenue base. The United States filed a lawsuit against Gachette in 2014 and, in 2016, the United States District Court for the Middle District of Florida enjoined Gachette from preparing federal tax returns and owning, operating, and franchising a tax preparation business. *See United States v. Walner Gachette*, 6:14-cv-1539 (M.D. Fla.).

15.     Each LBS store was managed by a District Sales Manager ("DSM"). DSMs hired, fired, and oversaw office managers, tax return preparers, and marketers (employees whose sole job was to solicit customers) at the store they managed.

16.     In 2010 and 2011, Erotida Harden worked as a tax return preparer at the LBS store located at 601 North Orlando Avenue, Orlando, Florida 32751. In 2011, Erotida Harden also prepared tax returns at the LBS office located at 5738 South Semoran Boulevard, Orlando, Florida 32822.

4

17.     In 2012, Erotida Harden was the DSM at the LBS store located at 1504 East Michigan Street, Orlando, Florida 32806.

18.     In 2012 and 2013, Erotida Harden also served as an LBS "General Sales Manager," which involved overseeing more LBS tax preparation stores owned by Walner Gachette, in addition to the store that she directly managed. In this position, Erotida Harden oversaw as many as nine LBS stores in the Orlando, Tampa, and Miami, Florida, and Atlanta, Georgia metropolitan areas, handling matters such as payroll and personnel issues, and acted as the liaison between the store DSMs and the owner, Walner Gachette. Erotida Harden continued to work for LBS through 2013, when LBS stores began to re-brand under new names.

19.     While working as a tax return preparer and a manager at Gachette's LBS tax preparation store, and serving as General Sales Manager overseeing several LBS stores, Erotida Harden learned how to prepare tax returns, and instruct and direct others to prepare tax returns, in an improper manner to generate bogus refunds (such as by preparing tax returns making false claims on Forms Schedule A and C and claiming falsely inflated or fabricated Earned Income Tax Credits) and how to solicit business at large, retail business centers, such as Wal-Mart, and private locations, such as apartment complexes. Following her employment at LBS, Erotida Harden has continued to prepare tax returns, and trained and instructed tax return preparers that she and/or Certified Taxes, LLC employ to prepare tax returns, in this improper manner. In turn, Michael Harden, Cortes, Claudio, Robenson, and Williams prepare tax returns in the improper manner learned from Erotida Harden, and Michael Harden, Cortes, Claudio, Robenson, and Williams train, instruct, direct, advise, and/or assist other tax return preparers at Certified Taxes, LLC to prepare tax returns in this improper manner.

5

20.     In 2013, Cortes worked as the DSM at the LBS store located at 6001 Silver Star Road, Orlando, Florida 32808.  Erotida Harden oversaw this store in her position as General Sales Manager.

21.     In 2013, Claudio worked as a tax return preparer at the LBS store located at 1504 E. Michigan Street, Orlando, Florida 32806.  Erotida Harden managed this store as DSM.

22.     In 2014, Erotida Harden began working at Advanced Tax Services, Inc., a tax preparation business owned by Marcgenson Marc.  In 2014 and 2015, Harden managed the Advanced Tax Services, Inc. store located at 5218 West Colonial Drive in Orlando, Florida. The United States is simultaneously filing suit against Marc and Advanced Tax Services, Inc. seeking a permanent injunction and the disgorgement of ill-gotten gains.

23.     In 2014, Cortes began working as a tax return preparer at Advanced Tax Services, Inc.

24.     On or about September 29, 2015, Erotida Harden incorporated Certified Taxes, LLC with the Florida Secretary of State.  Erotida Harden was identified as the member and registered agent of Certified Taxes, LLC.  On October 4, 2016, Certified Taxes, LLC filed a reinstatement document that identified Cortes as a manger of Certified Taxes, LLC.  The annual report for Certified Taxes, LLC, filed on January 25, 2018, identifies Erotida Harden as the "Owner/CEO" and Cortes as the "Manager" of Certified Taxes, LLC.  Harden continues to serve as the registered agent of Certified Taxes, LLC.

25.     On or about December 14, 2015, Erotida Harden and Cortes terminated their employment agreements with Advanced Tax Services, Inc. Erotida Harden and Cortes subsequently began preparing tax returns and operating a tax preparation business under the name Certified Taxes.

26.     In 2018, Erotida Harden managed the Certified Taxes store located on Pine Hills Road in Orlando.  Cortes managed the Certified Taxes store located on Lacoste Drive in Orlando, which is a former LBS store location.

27.     To electronically file tax returns, the IRS requires that individuals obtain from the IRS an Electronic Filing Identification Number.  Erotida Harden is unable to obtain an EFIN because she was adjudicated guilty of felonies in 2007 and 2010.  Thus, Aida Cortes obtained the EFIN in her name, which is why the EFIN registered to Cortes appears on tax returns prepared at the Certified Taxes store located on Pine Hills Road even though Cortes manages the store located on La Costa Drive.

28.     According to IRS records of tax returns filed identifying Erotida Harden's Preparer Tax Identification Number ("PTIN"), Erotida Harden personally prepared 84 tax returns in 2018.  Of these 84 tax returns, 82 tax returns, or 97%, claimed a refund; 60 tax returns, or 71%, claimed the Earned Income Tax Credit ("EITC").[1]

29.     Because Erotida Harden does not always properly identify herself as the paid preparer of tax returns that she prepared by recording her IRS-issued PTIN on the tax returns, it is impossible to identify all of the tax returns that Erotida Harden has personally prepared.  For example, in 2017, 0 tax returns were filed identifying Erotida Harden's PTIN in the paid preparer section of tax returns.  However, at least 252 tax returns filed in 2017 report Erotida Harden's name as the paid preparer but identify Aida Cortes' PTIN as the paid preparer.  A tax return

---

[1] The Earned Income Tax Credit is a refundable tax credit available to certain low-income working people in varying amounts based on the taxpayer's income, filing status, and claimed number of dependents.

preparer who fails to report his or her PTIN on a tax return that he or she prepares violates 26 U.S.C. § 6695(c).

30. According to IRS records of tax returns filed identifying Michael Harden's PTIN, Michael Harden personally prepared the following number of tax returns identifying him as the paid preparer in 2016, 2017, and 2018:

| Processing Year | Total Number of Returns | Number of Returns Claiming a Refund | % of Returns Claiming a Refund | Number and % of Returns Claiming EITC |
|---|---|---|---|---|
| 2016 | 299 | 299 | 100% | 245 (81%) |
| 2017 | 282 | 280 | 99% | 230 (81%) |
| 2018 | 341 | 339 | 99% | 272 (79%) |

31. Of the 922 tax returns that Michael Harden prepared from 2016 through 2018, only 4 tax returns did not request a refund.

32. According to IRS records of tax returns filed identifying Aida Cortes' PTIN, Cortes personally prepared the following number of tax returns identifying her as the paid preparer in 2015, 2016, 2017, and 2018:

| Processing Year | Total Number of Returns | Number of Returns Claiming a Refund | % of Returns Claiming a Refund | Number and % of Returns Claiming EITC |
|---|---|---|---|---|
| 2015 | 520 | 520 | 100% | 415 (79%) |
| 2016 | 16 | 13 | 81% | 8 (50%) |
| 2017 | 283[2] | 282 | 99% | 222 (78%) |
| 2018 | 429 | 426 | 99% | 290 (67%) |

33. Of the 1,248 tax returns that Cortes prepared from 2015 through 2018, only 7 tax returns did not request a refund.

---

[2] As discussed in paragraph 29, *supra*, at least 252 of these tax returns report Erotida Harden's name as the name of the paid preparer, although they also report Cortes' PTIN as the paid preparer's PTIN.

34.     According to IRS records of tax returns filed identifying Yahaira Claudio's PTIN, Claudio personally prepared the following number of tax returns identifying her as the paid preparer in 2015, 2016, 2017, and 2018:

| Processing Year | Total Number of Returns | Number of Returns Claiming a Refund | % of Returns Claiming a Refund | Number and % of Returns Claiming EITC |
|---|---|---|---|---|
| 2015 | 68 | 68 | 100% | 83 (57%) |
| 2016 | 209 | 208 | 99% | 173 (82%) |
| 2017 | 109 | 109 | 100% | 76 (69%) |
| 2018 | 146 | 146 | 100% | 90 (61%) |

35.     Of the 532 tax returns that Claudio prepared from 2015 through 2018, only 1 tax return did not request a refund.

36.     According to IRS records of tax returns filed identifying Tameka Robenson's PTIN, Robenson personally prepared the following number of tax returns identifying her as the paid preparer in 2016, 2017, and 2018:

| Processing Year | Total Number of Returns | Number of Returns Claiming a Refund | % of Returns Claiming a Refund | Number and % of Returns Claiming EITC |
|---|---|---|---|---|
| 2016 | 276 | 274 | 99% | 187 (67%) |
| 2017 | 321 | 318 | 99% | 203 (63%) |
| 2018 | 421 | 419 | 99% | 260 (61%) |

37.     Of the 1,018 tax returns that Robenson prepared from 2016 through 2018, only 7 tax returns did not request a refund.

38.     According to IRS records of tax returns filed identifying Natasha Williams' PTIN, Williams personally prepared the following number of tax returns identifying her as the paid preparer in 2017 and 2018:

| Processing Year | Total Number of Returns | Number of Returns Claiming a Refund | % of Returns Claiming a Refund | Number and % of Returns Claiming EITC |
|---|---|---|---|---|
| 2017 | 86 | 86 | 100% | 67 (77%) |
| 2018 | 79 | 79 | 100% | 68 (86%) |

39.     According to IRS records showing tax returns filed identifying the Employer Identification Numbers and/or the Electronic Filing Identification Numbers used by Certified Taxes, LLC, Certified Taxes, LLC stores filed at least 794 tax returns in 2016, 1,215 tax returns in 2017, and 1,621 tax returns in 2018.

40.     A tax return preparer, as defined 26 U.S.C. § 7701(a)(36), includes not only the individual who physically prepares a tax return for compensation, but also anyone "who employs one or more persons" to prepare tax returns for compensation.  In addition to owning and operating tax preparation stores since 2015 (directly or through Certified Taxes, LLC), Erotida Harden and Aida Cortes personally prepare tax returns.

### The Defendants' Activities

41.     The Defendants prepare tax returns to generate bogus refunds for customers, enabling the Defendants to charge exorbitant fees and maximize profits at the expense of the United States Treasury.

42.     Many of the Defendants' customers earn low to moderate incomes and lack knowledge regarding tax law and tax return preparation. Customers often have no knowledge that the Defendants have prepared and filed false tax returns on their behalf.  For others, the Defendants mislead customers about what can "legally" be claimed on their tax returns, particularly with respect to various credits and deductions, and by promising customers thousands of dollars of (illegal) refunds to convince them to have the Defendants prepare their tax returns.

43.     The Defendants make false claims on tax returns, particularly on the forms attached to those returns, in order to improperly increase customers' refunds.  After completing the returns, the Defendants and those acting at their direction falsely tell the customers that these

forms legally increased the customers' refunds, and charge higher (and often undisclosed) fees due to the additional forms and the higher refund that the Defendants claimed. The Defendants charge customers fees for preparing the return, fees for each tax form attached to the return, and fees for filing the return. These fees are all deducted from the customer's tax refund, often without the customer being told the amount that the Defendants actually charged for preparing the tax return.

44.     The Defendants request on customers' tax returns a refund amount that is not based on the customer's actual income, expenses, deductions, and applicable qualifying credits. Instead, the refund is based on fabricated income, expenses, deductions, and credits reported by the Defendants.

45.     The Defendants engage in unlawful tax return preparation practices including:

a.      Making false claims for the Earned Income Tax Credit;

b.      Circumventing due diligence requirements in order to unlawfully maximize the Earned Income Tax Credit;

c.      Fabricating businesses and related business income and expenses;

d.      Improperly claiming false filing status, such as Head of Household;

e.      Fabricating itemized deductions, including for unreimbursed employee business expenses, charitable contributions, and tax preparation fees paid;

f.      Reporting inflated federal income tax withholdings that far exceed the amounts actually reported on customers' Forms W-2;

g.      Improperly preparing returns based on paystubs rather than Forms W-2;

h.      Falsely claiming the federal Fuel Tax Credit;

i.      Claiming education credits to which their customers are not entitled;

j.      Failing to identify the actual paid preparer of the tax return;

11

k.      Failing to provide customers with a copy of the completed tax return; and

l.      Charging deceptive and unconscionable fees.

**Phony Claims for the Earned Income Tax Credit
and Failure to Comply with Due Diligence Requirements**

46.     The Defendants prepare tax returns that include fraudulent claims for the Earned

Income Tax Credit ("EITC") often based on fabricated business income and expenses, bogus or

improperly-claimed dependents, and/or false filing status.

47.     The EITC is a refundable tax credit available to certain low-income working

people.  The amount of the credit is based on the taxpayer's income, filing status, and claimed

number of dependents. *See* 26 U.S.C. § 32 and the accompanying Treasury Regulations.

Because the EITC is a refundable credit, claiming an EITC can, in certain circumstances, reduce

a taxpayer's federal tax liability below zero, entitling the taxpayer to a payment from the U.S.

Treasury.

48.     Due to the method used to calculate the EITC, an individual can claim a larger

EITC by claiming multiple dependents and, for certain income ranges, individuals with higher

earned income are entitled to a larger credit than those with lower earned income.  The amount

of the credit increases as income increases between $1 and $14,000, and decreases as income

increases beyond $18,350.  Some tax preparers who manipulate reported income to maximize the

EITC refer to this range of earned income corresponding to a maximum EITC as the "sweet

spot" or "golden range."  For tax year 2017, the maximum EITC was $6,318 and was available

to eligible individuals with three dependent children who earned income between $14,000 and

$18,350.

49.    Because of the way the EITC is calculated, reporting more income, up to a certain point, allows customers to receive a larger refundable credit.  Similarly, claiming losses to offset higher income to decrease the total reported income and to fall within the "sweet spot" allows customers to claim a larger refundable credit.

50.    The Defendants falsify information to claim the maximum EITC for customers. For example, to bring the customer's reported earned income within the "sweet spot" for the EITC, and depending on a customer's actual income, the Defendants inflate or fabricate business income reported on a Form Schedule C, "Profit or Loss from Business (Sole Proprietorship)" (used to report income and expenses from a sole proprietorship), in order to fraudulently increase customers' reported earned income, or claim bogus Schedule C expenses to fraudulently decrease customers' reported earned income.

51.    Because of the potential for abuse in claiming the EITC, Congress has authorized the Secretary of the Treasury to impose "due diligence" requirements on federal tax return preparers claiming the EITC for their customers. These "due diligence" requirements obligate the tax return preparer to make "reasonable inquiries" to ensure the customer is legitimately entitled to the EITC.  The tax return preparer may not "ignore the implications of information furnished to, or known by, the tax return preparer, and must make reasonable inquiries if the information furnished to the tax return preparer appears to be incorrect, inconsistent, or incomplete."  Tax return preparers must also document their compliance with these requirements and keep that documentation for three years.

52.    The Defendants fail to comply with the due diligence requirements.  The Defendants show an intentional disregard for the tax laws and in particular for the due diligence requirements.

13

53.     In 2015, the IRS investigated whether a preparer at the Advanced Tax Services store located on Colonial Drive in Orlando, which Erotida Harden managed, complied with the due diligence requirements when preparing tax returns. The IRS reviewed 75 tax year 2013 tax returns prepared by a tax return preparer at that Advanced Tax Services store in 2014, reviewed the related customer files, interviewed the preparer, and interviewed Marcgenson Marc, the owner of Advanced Tax Services. The IRS determined that all 75 of the reviewed tax returns failed to comply with the due diligence requirements. The IRS assessed $37,500 against the preparer for 75 violations of 26 U.S.C. § 6695(g).  According to the preparer, when preparing these tax returns, she followed the Advanced Tax Services-established policies and procedures and the training provided to her at Advanced Tax Services.  Erotida Harden trained the preparers at Advanced Tax Services on how to prepare tax returns, and reviewed all tax returns at the store located on Colonial Drive before they were electronically filed with the IRS.  Erotida Harden was responsible for electronically filing the tax returns.

**Fabricated Schedule C Business Income and Expenses**

54.     The Defendants prepare tax returns reporting non-existent businesses on bogus Forms Schedule C.  On some of these returns, the Defendants report substantial business income, but little or no expenses.  On other returns, the Defendants report substantial expenses, but little or no income.  The determining factor is whether the tax return preparer needs to inflate a customer's income (or create income when the customer has none) to bring the reported income within the EITC "sweet spot," or to lower the taxable income of a customer who has actual income (such as wages reported on a W-2) in order to either bring the income within the EITC "sweet spot" or simply to create a phony business loss to offset the customer's wages and falsely or fraudulently reduce the customer's income tax liability.

14

55.     Preparers at Certified Taxes prepared and filed a total of 794 federal income tax returns in 2016.  That year, preparers at Certified Taxes, including Michael Harden, Cortes, Claudio, and Robenson, prepared 472 tax returns (or more than 59% of the tax returns prepared at Certified Taxes in 2016) reporting, on a Form Schedule C, no income, sales, or gross receipts from a business, but expenses totaling $4,000 or more purportedly incurred for a business. Of these 472 tax returns reporting no income but over $4,000 in expenses on a Form Schedule C, 369 reported expenses totaling $10,000 or more; 117 reported expenses totaling $20,000 or more; and 31 reported expenses totaling $30,000 or more.

56.     Preparers at Certified Taxes prepared and filed a total of 1,215 federal income tax returns in 2017.  That year, preparers at Certified Taxes, including Erotida Harden, Michael Harden, Cortes, Claudio, Robenson, and Williams, prepared 653 tax returns (or more than 53% of the tax returns prepared at Certified Taxes in 2017) reporting, on a Form Schedule C, no income, sales, or gross receipts from a business, but expenses totaling $4,000 or more purportedly incurred for a business. Of these 653 tax returns reporting no income but over $4,000 in expenses on a Form Schedule C, 496 reported expenses totaling $10,000 or more; 141 reported expenses totaling $20,000 or more; and 40 reported expenses totaling $30,000 or more.

57.     Preparers at Certified Taxes prepared and filed a total of 1,621 federal income tax returns in 2018.  That year, preparers at Certified Taxes, including Erotida Harden, Michael Harden, Cortes, Claudio, Robenson, and Williams, prepared 702 tax returns (or more than 43% of the tax returns prepared at Certified Taxes in 2018) reporting, on a Form Schedule C, no income, sales, or gross receipts from a business, but expenses totaling $4,000 or more purportedly incurred for a business. Of these 702 tax returns reporting no income but over

15

$4,000 in expenses on a Form Schedule C, 567 reported expenses totaling $10,000 or more; 183

reported expenses totaling $20,000 or more; and 49 reported expenses totaling $30,000 or more.

### Customers 1 and 2

58.     Erotida Harden prepared the 2017 federal income tax return of Customers 1 and 2

of Orlando, Florida. Customer 1 was employed at a pawn shop in 2017, and received wages

totaling $52,065 reported to him on a Form W-2.

59.     On the Schedule C attached to the tax return, Erotida Harden falsely reported that

Customer 1 owned a business, identified as his *employer* (as identified on the Form W-2 issued

to Customer 1), through which Customer 1 had no sales and received no gross receipts, but

incurred $23,637 in expenses, including $13,009 for car and truck expenses, $2,238 for an office

expense, $1,905 for supplies, $2,093 for travel, $2,496 for uniforms, and $1,196 for a cell phone.

Customer 1 did not incur any such purported business expenses. Erotida Harden falsely reduced

the taxable income of Customers 1 and 2 to zero and claimed a phony EITC in the amount of

$4,669 and a bogus refund of $10,426 on the 2017 tax return of Customers 1 and 2.

### Customers 3 and 4

60.     Robenson prepared the 2016 and 2017 federal income tax returns of Customers 3

and 4 of Windermere, Florida. In 2017, Customer 3 received wages reported on the tax return in

the amount of $71,708 and Customer 4 was not employed. On the Schedule C attached to the

return, Robenson falsely reported that Customer 3 owned a business, not identified by name or

type of business, through which Customer 3 had no sales and received no gross receipts, but

incurred $63,289 in expenses, all for purported car and truck expenses. By reporting the

fabricated loss on the Schedule C, Robenson falsely reduced the taxable income reported on the

return to zero. Robenson also falsely reported that Customers 3 and 4 purchased 2,880 gallons of

16

nontaxable, undyed diesel fuel (discussed in paragraphs 140-143, *infra*). Assuming, conservatively, that the gas was purchased at $2.00 per gallon, Customers 3 and 4 would have incurred a gas expense in the amount of $5,600. Robenson claimed a bogus fuel tax credit in the amount of $700. Thus, Robenson claimed a phony EITC in the amount of $3,370 and a bogus refund of $5,489 on the 2017 tax return of Customers 3 and 4.

61.     Robenson prepared a separate 2016 tax return for Customer 3. Customer 3 received wages totaling $67,547 in 2016. On the Schedule C attached to the return, Robenson falsely reported that Customer 3 owned a business, not identified by name or type of business, through which Customer 3 had no sales and received no gross receipts, but incurred $49,018 in expenses, including $25,248 for car and truck expenses, $11,400 for renting or leasing business property, $2,335 for supplies, $6,613 for meals and entertainment, and $3,422 for utilities. As a result, Robenson claimed a phony EITC in the amount of $1,791 and a bogus refund in the amount of $2,754 on Customer 3's 2016 tax return.

**Customer 5**

62.     Claudio prepared the 2017 federal income tax return of Customer 5 of Kissimmee, Florida. In 2017, Customer 5 received wages totaling $41,737. On the Schedule C attached to the return, Claudio falsely reported that Customer 5 owned a business, not identified by name or type of business, through which Customer 5 had no sales and received no gross receipts, but incurred $23,221 in expenses, all for purported car and truck expenses. By reporting the fabricated loss on the Schedule C, Claudio claimed a phony EITC in the amount of $3,370 and a bogus refund of $9,031 on Customer 5's 2017 tax return.

63.     Michael Harden prepared Customer 5's 2016 federal income tax return. Customer 5 received wages totaling $44,534 in 2016. On the Schedule C attached to the return, Michael

17

Harden falsely reported that Customer 5 owned a business, not identified by name or type of business, through which Customer 5 had no sales and received no gross receipts, but incurred $12,749 in expenses, all for purported car and truck expenses. By reporting the fabricated loss on the Schedule C, Michael Harden claimed a phony EITC in the amount of $1,202 and a bogus refund of $5,811 on Customer 5's 2016 tax return.

**Customers 6 and 7**

64.     Michael Harden prepared the 2017 federal income tax returns of Customers 6 and 7 of Apopka, Florida. Customers 6 and 7 were married, but Michael Harden prepared separate tax returns (as further discussed in paragraph 94, *infra*). Customers 6 and 7 provided Michael Harden with copies of their Forms W-2. Michael Harden asked Customers 6 and 7 how far they drove to and from work.

65.     In 2017, Customer 6 received wages from her job totaling $74,856. Customer 6 did not own or operate a business. On the Schedule C attached to the return, Michael Harden falsely reported that Customer 6 owned a business, not identified by name or type of business, through which Customer 6 had no sales and received no gross receipts, but incurred $45,311 in expenses, including $25,535 for car and truck expenses, $8,616 for renting business property, $6,700 for meals and entertainment, and $4,440 for utilities. Customer 6 did not discuss these purported expenses with Michael Harden, and did not tell Michael Harden that she owned a business. By reporting the fabricated loss on the Schedule C, and filing a separate tax return claiming the dependent of Customers 6 and 7, Michael Harden claimed a phony EITC in the amount of $1,613 and a bogus refund of $9,071 on Customer 6's 2017 tax return.

66.     In 2017, Customer 7 received wages from his job totaling $36,231. On the Schedule C attached to the return, Michael Harden falsely reported that Customer 7 owned a

18

business, not identified by name or type of business, through which Customer 7 had no sales and

received no gross receipts, but incurred $25,535 in expenses, all for purported car and truck

expenses (the exact same amount of fabricated car and truck expenses that Michael Harden

reported on his wife's tax return). Michael Harden also falsely reported that Customer 7

purchased 3,600 gallons of nontaxable, undyed diesel fuel. Assuming, conservatively, that the

gas was purchased at $2.00 per gallon, Customer 7 would have incurred a gas expense in the

amount of $7,200. Michael Harden claimed a bogus fuel tax credit in the amount of $875

(discussed in paragraphs 140-143, *infra*). By reporting the fabricated loss on the Schedule C and

the phony fuel tax credit, Michael Harden claimed a phony EITC in the amount of $332 and a

bogus refund of $5,862 on Customer 7's 2017 tax return.

### Customer 8

67.     The 2016 and 2017 federal income tax returns of Customer 8 of Winter Garden,

Florida were prepared at the Certified Taxes store on Pine Hills Road in Orlando. Erotida Harden

is identified as the preparer of the 2016 tax return and Robenson prepared the 2017 tax return.

Customer 8 was employed as a supervisor for a construction company in 2016 and 2017. Most

of Customer 8's job-related expenses were reimbursed by his employer. Customer 8 did not own

a business in 2016 or 2017, and did not inform the tax return preparers that he owned a business

or had any business-related expenses. Customer 8 gave the preparers his ID, social security

number, and Forms W-2.

68.     In 2016, Customer 8 received wages totaling $59,037. On the Schedule C

attached to the 2016 tax return, Erotida Harden falsely reported that Customer 8 owned a

business, not identified by name or type of business, through which Customer 8 had no sales and

received no gross receipts, but incurred $20,053 in expenses, including $13,537 for car and truck

19

expenses, $2,634 for supplies, $1,536 for a cell phone, and $2,346 for work clothes. Customer 8 did not incur any such purported business expenses and did not inform the preparer that he incurred these expenses.  As a result, Erotida Harden claimed a bogus refund of $4,423 on Customer 8's 2016 tax return.

69.     In 2017, Customer 8 received wages totaling $108,940.  On the Schedule C attached to the tax return, Robenson falsely reported that Customer 8 owned a business, identified as his *employer* (as identified on the Form W-2 issued to Customer 8), through which Customer 8 had no sales and received no gross receipts, but incurred $33,575 in expenses, all for purported car and truck expenses. Customer 8 did not incur any such purported business expenses and did not inform Robenson that he incurred these expenses.  Robenson thus claimed a bogus refund of $8,472 on Customer 8's 2017 tax return.

70.     Customer 8 did not know that Erotida Harden and Robenson reported on his tax returns that he owned a business that incurred tens of thousands of dollars in expenses. The preparers did not discuss the tax preparation fees with Customer 8, but Customer 8 was charged over $400 to have the 2017 tax return prepared.

### Customers 9 and 10

71.     Cortes prepared the 2016 and 2017 federal income tax returns of Customers 9 and 10 of Kissimmee, Florida. Although Cortes prepared the 2016 tax return, Claudio is identified as the paid preparer. Neither Customer 9 nor Customer 10 owned a business in 2016 or 2017, and they did not inform Cortes that they owned a business or had any business-related expenses when they had their 2016 and 2017 tax returns prepared.  When having these returns prepared, Customers 9 and 10 provided Cortes with their Forms W-2, IDs, social security cards, and birth certificates for their children. In 2016 and 2017, Customer 9 was employed as a corrections

20

officer for the Federal Bureau of Prisons, and Customer 10 was employed by Star Island and the City of Kissimmee. Cortes asked Customers 9 and 10 how far they drove from their home to their jobs.

72. In 2016, Customers 9 and 10 received wages totaling $69,854. On the Schedule C attached to the 2016 tax return (falsely identifying Claudio as the paid preparer), Cortes falsely reported that Customer 9 owned a business, not identified by name or type of business, through which Customer 9 had no sales and received no gross receipts, but incurred $27,667 in expenses, including $15,047 for car and truck expenses, $4,539 for renting business property, $995 for supplies, $1,888 for travel, $593 for meals and entertainment, $2,850 for a cell phone, and $1,755 for uniforms. By reporting the fabricated loss for the non-existent business, Cortes falsely claimed a phony EITC in the amount of $2,386 and a bogus refund of $10,990 on the 2016 tax return of Customers 9 and 10.

73. In 2017, Customers 9 and 10 received wages totaling $77,139. On the Schedule C attached to the 2017 tax return, Cortes falsely reported that Customer 9 owned a business, not identified by name or type of business, through which Customer 9 had no sales and received no gross receipts, but incurred $35,881 in expenses, all for purported car and truck expenses. By reporting the fabricated loss for the non-existent business, Cortes falsely claimed a phony EITC in the amount of $2,462 and a bogus refund of $11,113 on the 2017 tax return of 9 and 10. Certified Taxes charged over $400 to prepare the 2017 tax return.

**Customer 11**

74. Michael Harden prepared the 2016 and 2017 federal income tax returns of Customer 11 of Clermont, Florida. Customer 11 was employed at Disney in 2016 and 2017.

21

Customer 11 did not own a business in 2016 or 2017, did not tell Michael Harden that he owned

a business, and did not discuss any business expenses with Michael Harden.

75.    In 2016, Customer 11 received wages from Disney totaling $50,344. On the

Schedule C attached to the 2016 tax return, Michael Harden falsely reported that Customer 11

owned a business, not identified by name or type of business, through which Customer 11

received $200 in gross receipts, but incurred $36,096 in expenses, including $11,136 for car and

truck expenses, $17,580 for renting business property, $4,800 for utilities, and $2,580 for wages.

By reporting the fabricated $35,896 loss on the Schedule C, Michael Harden claimed a phony

EITC in the amount of $35 and a bogus refund of $4,297 on Customer 11's 2016 tax return.

76.    In 2017, Customer 11 received wages from Disney totaling $76,665. On the

Schedule C attached to the 2017 tax return, Michael Harden falsely reported that Customer 11

owned a business, not identified by name or type of business, through which Customer 11 had no

sales and received no gross receipts, but incurred $46,277 in expenses, including $20,667 for car

and truck expenses, $17,400 for renting business property, $400 for supplies, $2,400 for meals

and entertainment, and $5,400 for utilities. By reporting the fabricated loss on the Schedule C,

Michael Harden claimed a bogus refund of $5,936 on Customer 11's 2017 tax return.

77.    The copies of the tax returns that Customer 11 received did not include the false

information reported on the Schedules C, but only contained the first few pages of the Form

1040. In 2018, Customer 11 applied for a mortgage. The bank questioned Customer 11 about

the self-employed business losses reported on his tax returns, which Customer 11 was not aware

of prior to applying for the loan. After speaking with a bank employee, Customer 11 questioned

someone at Certified Taxes about the phony business expenses claimed on his tax returns. The

22

individual at Certified Taxes with whom he spoke attempted to deny reporting any business expenses on Customer 11's tax returns.

### Customer 12

78.     The 2016 and 2017 federal income tax returns of Customer 12 of Oldsmar, Florida were prepared at Certified Taxes. Erotida Harden is identified as the preparer of the 2016 tax return, and Williams is identified as the preparer of the 2017 tax return. Customer 12 was not present when her tax returns were prepared, and only communicated with the preparer by email or fax, including transmitting copies of her ID and Forms W-2. The preparer did not ask Customer 12 additional questions. Customer 12 was employed in 2016 and 2017, did not own a business in 2016 or 2017, did not tell the preparer that she owned a business, and did not discuss any business expenses with the preparer.

79.     In 2016, Customer 12 received wages as a senior manager at a health care company totaling $76,742. On the Schedule C attached to the 2016 tax return, the preparer falsely reported that Customer 12 owned a business, not identified by name or type of business, through which Customer 12 had no sales and received no gross receipts, but incurred $47,158 in expenses, including $365 for advertising, $18,209 for car and truck expenses, $5,000 for legal and professional services, $16,000 for renting business vehicles, machinery, and equipment, $564 for supplies, $1,800 for meals and entertainment, and $5,220 for utilities. By reporting the fabricated loss on the Schedule C, the preparer claimed a phony EITC in the amount of $1,553 and a bogus refund of $5,791 on Customer 12's 2016 tax return.

80.     In 2017, Customer 12 received wages from Disney totaling $56,446. On the Schedule C attached to the 2017 tax return, the preparer falsely reported that Customer 12 owned a business, not identified by name or type of business, through which Customer 12 had no sales

and received no gross receipts, but incurred $46,260 in expenses, including $15,267 for car and truck expenses, $17,000 for renting business property, $4,000 for travel, $3,992 for meals and entertainment, and $6,001 for utilities. By reporting the fabricated loss on the Schedule C, the preparer claimed a phony EITC in the amount of $370 and a bogus refund of $5,028 on Customer 12's 2017 tax return. Customer 12 was charged over $400 to have the 2017 tax return prepared. Customer 12 did not receive complete copies of her filed tax returns.

**Customers 13 and 14**

81.　Michael Harden prepared the 2017 joint tax return of Customers 13 and 14 of Hallandale, Florida and separate 2016 tax returns for Customers 13 and 14.

82.　In 2017, Michael Harden reported on the tax return that Customers 13 and 14 received wages totaling $32,941. Customer 14 also attended college in 2017. On the Schedule C attached to the 2017 tax return, Michael Harden falsely reported that Customer 13 owned a business, not identified by name or type of business, through which Customer 13 had no sales and received no gross receipts, but incurred $16,748 in expenses, all for purported car and truck expenses. Michael Harden also falsely claimed a phony fuel tax credit (discussed in paragraphs 140-143, *infra*) in the amount of $1,166. By reporting the fabricated business loss and claiming a phony fuel tax credit, Michael Harden falsely claimed a bogus refund of $4,629 on the 2017 tax return of Customers 13 and 14.

83.　Michael Harden prepared Customer 13's 2016 federal income tax return. Michael Harden reported on the tax return that Customer 13 received wages totaling $28,460, from which $3,181 in taxes were withheld. According to a Form W-2 issued to Customer 13, the wages actually totaled $39,457, and only $1,300 in tax was withheld, or $1,881 less than Michael Harden reported (discussed in paragraph 134, *infra*). On the Schedule C attached to Customer

24

13's 2016 tax return, Michael Harden falsely reported that Customer 13 owned a business, not identified by name or type of business, through which Customer 13 had no sales and received no gross receipts, but incurred $19,688 in expenses, including $12,238 for car and truck expenses, $4,500 for renting business property, and $2,950 for utilities. Michael Harden also falsely claimed a phony fuel tax credit (discussed in paragraphs 140-143, *infra*) in the amount of $700. By reporting the fabricated business loss, claiming a phony fuel tax credit, and reporting falsely inflated tax withholdings, Michael Harden claimed a bogus refund of $3,881 on Customer 13's 2016 tax return.

84.     Michael Harden prepared Customer 14's 2016 federal income tax return. In 2016, Customer 14 received wages totaling $19,375, from which $981 was withheld in taxes, as reported on her Form W-2. On the Schedule C attached to Customer 14's 2016 tax return, Michael Harden falsely reported that Customer 14 owned a business, not identified by name or type of business, through which Customer 14 had no sales and received no gross receipts, but incurred $11,640 in expenses, all for purported car and truck expenses. Michael Harden also falsely claimed that $1,981 (exactly $1,000 more than reported on her Form W-2) in taxes were withheld from Customer 14's wages (discussed in paragraph 134, *infra*). Michael Harden also claimed a phony education credit (discussed in paragraph 162, *infra*) in the amount of $422. By reporting the fabricated business loss, false withholdings, and claiming a phony education credit, Michael Harden claimed a bogus refund of $2,581 on Customer 14's 2016 tax return.

**Intentionally Claiming an Improper Filing Status and Bogus Dependents**

85.     The Defendants prepare tax returns reporting false filing status. Specifically, Head of Household filing status is claimed on customers' tax returns to increase the amount of

the customers' standard deduction, when the Defendants know that the customer does not qualify for Head of Household filing status.

86.     The Defendants file separate returns for married couples who are not living apart, improperly using the "Head of Household" or "Single" filing status, both of which are unavailable to married couples living together.  Often, this is an attempt to increase the claimed EITC; a qualifying couple with at least two children who, together, might otherwise receive a single EITC refund of $5,000 by properly claiming "married, filing jointly," may instead each unlawfully receive a refund of $3,000 or more, by both falsely claiming Head of Household or single status and each claiming at least one dependent.

87.     Additionally, the Defendants claim dependents who do not actually qualify as dependents on customers' tax returns, and then claim Head of Household filing status to increase the customers' refunds through both the false filing status and fraudulent EITC claim based on the bogus dependents.

**Customers 15 and 16**

88.     For example, Robenson prepared the 2017 federal income tax returns of Customers 15 and 16 of Orlando, Florida.  Customer 16 provided Robenson with copies of her Form W-2 and her husband's Form W-2, along with receipts for healthcare, the Veterans Administration, insurance, and school records for their children.  Robenson informed Customer 16 that she and her husband did not need to file a joint tax return.  Robenson asked Customer 16 for the amount of their personal cell phone bill.  Customer 15 was not present when the tax returns were prepared and did not have any discussions with Robenson.

89.     Customer 16 worked at a restaurant in 2017 and received wages totaling $26,710. Despite knowing that Customers 15 and 16 were married, Robenson falsely claimed Head of

26

Household filing status on Customer 16's 2017 tax return. Customer 16 did not own or operate a business in 2017, did not tell Robenson that she owned or operated a business, and did not discuss any business- or job-related expenses with Robenson. On the Schedule C attached to the return, Robenson falsely reported that Customer 16 owned a business, not identified by name or type of business, through which Customer 16 had no sales and received no gross receipts, but incurred expenses totaling $8,727, all for purported car and truck expenses. As a result of filing a separate tax return falsely claiming Head of Household filing status and reporting a phony loss from a non-existent business, Robenson falsely claimed the EITC in the amount of $5,616 and a bogus refund of $11,930 on Customer 16's 2017 tax return.

90.     Customer 15 worked at a restaurant in 2017 and received wages totaling $55,961. Because he was not present when his tax return was prepared, he never discussed any job-related expenses, medical expenses, or charitable contributions with Robenson. On the Schedule A attached to the return, Robenson falsely reported that Customer 15 incurred unreimbursed employee business expenses in the amount of $24,641, including $3,840 for a cell phone, $2,544 for work clothes, and $887 for supplies; the remaining purported $17,370 in job-related expenses was not categorized on the tax return. Robenson also falsely claimed that Customer 15 incurred $10,010 in medical expenses and $4,032 in charitable contributions, when Customer 15 had no such expenses and neither he nor his wife told Robenson that he incurred such expenses. Because Customer 15 was not present when his tax return was prepared, Robenson instructed Customer 16 to sign Customer 15's completed tax return. As a result of filing a separate tax return and making the false claims on the Schedule A, Robenson claimed a bogus refund of $3,906 on Customer 15's 2017 tax return. Customers 15 and 16 were charged around $400 for each tax return prepared.

27

**Customers 17 and 18**

91.     Robenson prepared the 2017 federal income tax returns of Customers 17 and 18 of Kissimmee, Florida. Customers 17 and 18 went to the Certified Taxes store together to have a tax return prepared. Customers 17 and 18 informed Robenson that they were married. Customer 17 received wages totaling $28,749 from his job. Robenson asked Customer 17 how far he drove to and from work and whether he purchased boots and pants for his job.

92.     Robenson filed separate 2017 tax returns for Customers 17 and 18, falsely claiming Head of Household filing status on Customer 17's return despite knowing he was married. Robenson misspelled the street name on Customer 17's tax return, while correctly spelling it on Customer 18's tax return. Robenson also falsely claimed as a dependent Customer 17's mother, who did not live with Customer 17 as reported, but lived in Puerto Rico in 2017 and received social security income. On the Schedule A attached to the return, Robenson falsely reported that Customer 17 incurred unreimbursed employee business expenses in the amount of $26,109, or over 90% of his wages, including $1,200 for a cell phone, $362 for work clothes, and $254 for supplies; the remaining purported $24,293 in job-related expenses was not categorized on the tax return. Robenson also falsely claimed that Customer 17 incurred $3,466 in medical expenses and $4,036 in charitable contributions, when Customer 17 had no such expenses and did not tell Robenson that he incurred such expenses. Robenson falsely claimed $33,900 in itemized deductions on the Schedule A, an amount that exceeded Customer 17's income by $5,151. Robenson also falsely reported that Customer 17 purchased 2,880 gallons of nontaxable, undyed diesel fuel. Assuming, conservatively, that the gas was purchased at $2.00 per gallon, Customer 17 would have incurred a gas expense in the amount of $5,760. Robenson claimed a bogus fuel tax credit in the amount of $700 (discussed in paragraphs 140-143, *infra*). By filing a

28

separate tax return for Customer 17, falsely claiming that Customer 17's mother was his dependent, and reporting the fabricated itemized deductions on Schedule A and the phony fuel tax credit, Robenson claimed a bogus refund of $2,476 on Customer 17's 2017 tax return. Robenson did not review the completed tax return with Customer 17, but only told Customer 17 the amount of his refund. Robenson charged Customer 17 over $400 to prepare his 2017 tax return.

93.     Robenson reported single filing status on Customer 18's 2017 tax return. Customer 18 received wages totaling $28,686 in 2017.  On the Schedule A attached to the return, Robenson falsely reported that Customer 18 incurred unreimbursed employee business expenses in the amount of $18,716, or over 65% of her wages, including $2,129 for a cell phone, $3,144 for work clothes, and $785 for supplies; the remaining purported $12,658 in job-related expenses was not categorized on the tax return. Robenson also falsely claimed that Customer 18 incurred $5,802 in medical expenses and $3,362 in charitable contributions, when Customer 18 had no such expenses and did not tell Robenson that she incurred such expenses. As a result, Robenson falsely reduced Customer 18's taxable income to zero, and claimed a bogus refund of $2,095 on Customer 18's 2017 tax return.

**Customers 6 and 7 (con't)**

94.     As discussed in paragraphs 64-66, *supra*, Michael Harden prepared separate 2017 federal income tax returns for Customers 6 and 7. Customers 6 and 7 were married, told Michael Harden that they were married, and had their tax returns prepared on the same visit to the tax preparation store, but Michael Harden prepared separate tax returns both claiming single filing status. Michael Harden reported the son of Customers 6 and 7 on the tax return of Customer 6, who received more income in 2017.  On both tax returns, Michael Harden claimed enormous

29

phony self-employed business losses (described in paragraphs 65-66, *supra*), to falsely reduce

the reported taxable income.  Additionally, by filing separate tax returns reporting large phony

business losses, and by claiming the dependent on Customer 6's tax return, Michael Harden

falsely claimed the EITC and large, bogus refunds on the 2017 tax returns of Customers 6 and 7.

### Bogus Schedule A Deductions

95.     The Defendants prepare tax returns reporting bogus itemized deductions on Form

Schedule A, "Itemized Deductions," to improperly or fraudulently reduce customers' taxable

income.

96.     For example, the Defendants prepare tax returns for customers that include Forms

Schedule A making false claims for purported unreimbursed employee business expenses.

Section 162 of the Internal Revenue Code governs trade or business expenses.  The Defendants

often claim deductions for fabricated, fraudulently inflated, and/or non-qualifying business

expenses, particularly for purported business miles driven by customers.  The Defendants ask

customers whether they incurred expenses for such personal expenditures such as cell phones

and clothing, without explaining to customers that these expenses are actually non-deductible.  If

the customer responds that they had such expenses, the Defendants then report these non-

deductible expenses as deductible employee business expenses in amounts that the Defendants

fabricate in order to maximize the customer's refund.  In instances where customers do have

actual qualifying expenses, such as for charitable contributions, the Defendants report a falsely

inflated amount of the expense that the customer incurred, to improperly increase the tax refund

claimed on the return.

### Customers 19 and 20

97.     Customers 19 and 20 of Orlando, Florida had their 2017 federal income tax return prepared at Certified Taxes. Claudio is identified as the paid preparer, but Customers 19 and 20 identified Cortes as the actual preparer. Customers 19 and 20 provided the preparer with copies of their IDs, Form W-2, Form 1098 mortgage statement, dividend income information, and social security numbers.

98.     Customer 19 received wages in the amount of $115,393 in 2017. On the Schedule A attached to the return, the preparer falsely reported that Customer 19 incurred unreimbursed employee business expenses in the amount of $22,773, including $1,450 for a cell phone and $3,281 for uniforms; the remaining purported $18,042 in job-related expenses was not categorized on the tax return. Customer 19 did not incur these expenses and did not provide this amount to the preparer. The preparer also falsely claimed that Customers 19 and 20 incurred $9,976 in medical expenses and $5,981 in charitable contributions, when Customers 19 and 20 had no such expenses and did not discuss these expenses with the preparer; the preparer only asked Customers 19 and 20 about commuting mileage, a nondeductible expense. By reporting the fabricated expenses on the Schedule A, the preparer claimed a bogus refund of $7,285 on the 2017 tax return of Customers 19 and 20. The preparer did not review the completed tax return with Customers 19 and 20 and did not provide them with a complete copy of the tax return, but only gave them the first two pages of the Form 1040.

### Customers 21 and 22

99.     Cortes prepared the 2017 tax return of Customers 21 and 22 of Deltona, Florida. Customers 21 and 22 provided the preparer with copies of their IDs, Forms W-2, Form 1098

mortgage statement, and social security cards. Cortes asked Customers 21 and 22 general questions about personal expenses.

100.     Customers 21 and 22 were both employed in 2017, and received wages totaling $98,349. On the Schedule A attached to the return, Cortes falsely reported that 21 and 22 incurred unreimbursed employee business expenses in the amount of $15,959, and the purported expenses were not categorized on the tax return. Customers 21 and 22 did not incur job-related expenses and did not tell Cortes that they incurred any such expenses. In 2017, Customers 21 and 22 donated approximately $2,000 to charity, but did not discuss any amount of expenses for charitable contributions with Cortes. Cortes, however, falsely reported that Customers 21 and 22 donated $8,316 in cash to charity in 2017. By reporting the fabricated expenses on the Schedule A, Cortes claimed a bogus refund of $5,312 on the 2017 tax return of Customers 21 and 22.

**Customer 23**

101.     Erotida Harden prepared the 2016 and 2017 tax returns of Customer 23 of Orlando, Florida. Customer 23 provided Erotida Harden with copies of her ID, Forms W-2, Form 1098 mortgage statement, and social security card. Erotida Haden did not ask Customer 23 many questions, but did ask about expenses for her home, including for repairs and utilities. Customer 23 was employed as a customer service representative in 2016 and 2017 and did not own a business in 2016.

102.     In 2017, Customer 23 received wages totaling $26,528. On the Schedule A attached to the 2017 tax return, Erotida Harden falsely reported that Customer 23 incurred unreimbursed employee business expenses in the amount of $23,155, over 87% of her wages, including $1,250 for a cell phone and $1,085 for supplies; the remaining purported $20,820 in job-related expenses was not categorized on the tax return. Customer 23 did not incur these

32

expenses and did not provide these amounts to Erotida Harden. Erotida Harden also falsely reported that Customer 23 donated $2,486 in cash to charity in 2017. The fabricated expenses on the Schedule A totaled $28,115, or $1,587 more than Customer 23's wages. By reporting the fabricated expenses on the Schedule A, Erotida Harden claimed a bogus refund of $2,706 on Customer 23's 2017 tax return.

103.    In 2016, Customer 23 received wages totaling $26,366. On the Schedule C attached to the 2016 tax return, Erotida Harden falsely reported that Customer 23 owned a business, not identified by name or type of business, through which Customer 23 had no sales and received no gross receipts, but incurred $14,295 in expenses, all for purported car and truck expenses. Customer 23 did not incur any such purported business expenses and did not inform Erotida Harden that she incurred these expenses (for a non-existent business). Thus, Erotida Harden claimed a bogus refund of $3,331 on Customer 23's 2016 tax return.

104.    Erotida Harden did not inform Customer 23 that she reported the phony job-related expenses and self-employed business expenses on Customer 23's tax returns.

**Customer 24**

105.    Customer 24, of Orlando, Florida, had his 2016 and 2017 tax returns prepared at the Certified Taxes store on Pine Hills Road in Orlando. Customer 24 provided the preparers with copies of his ID, Forms W-2, and Form 1098 mortgage statement. Customer 24 was employed at a commercial printing service in 2016 and 2017 and did not own a business in 2016. Customer 24 did not incur any out-of-pocket expenses for his job.

106.    In 2016, Customer 24 received wages totaling $30,701. On the Schedule A attached to the 2016 tax return, the Certified Taxes preparer falsely reported that Customer 24 incurred unreimbursed employee business expenses totaling $6,983, including $1,254 for

33

uniforms and $1,252 for a cell phone; the remaining job-related expenses were not categorized on the tax return. The preparer also falsely reported that Customer 24 incurred medical expenses in the amount of $8,987 and contributed $2,598 in cash to charity. Customer 24 did not incur any of these expenses, and did not provide these amounts to the preparer. As a result of the fabricated deductions on the Schedule A, the Certified Taxes prepared claimed a bogus refund of $2,668 on Customer 24's 2016 tax return.

107. In 2017, Customer 24 received wages totaling $30,874. The preparer did not ask Customer 24 any questions when preparing the 2017 tax return. On the Schedule A attached to the 2017 tax return, the Certified Taxes preparer falsely reported that Customer 24 incurred unreimbursed employee business expenses in the amount of $19,295, over 62% of his wages, including $1,236 for a cell phone and $987 for uniforms; the remaining purported $17,072 in job-related expenses was not categorized on the tax return. The preparer also falsely reported that Customer 24 incurred medical expenses in the amount of $8,690 and contributed $4,059 in cash to charity. Customer 24 did not incur any of these expenses, and did not provide these amounts to the preparer. The fabricated expenses on the Schedule A totaled $30,198, and falsely reduced Customer 24's taxable income to zero. By reporting the fabricated expenses on the Schedule A, the Certified Taxes preparer claimed a bogus refund of $3,759 on Customer 24's 2017 tax return.

**Customers 25 and 26**

108. Cortes prepared the 2017 federal income tax return of Customers 25 and 26 of Orlando, Florida.

109. Customers 25 and 26 were both employed in 2017, as an auto parts store manager and handling medical records at a doctor's office, respectively, and received wages totaling

34

$73,662. Customers 25 and 26 had their 2017 tax return prepared at Certified Taxes because they purchased a house and wanted to ensure that their mortgage was correctly reported on their tax return.

110. On the Schedule A attached to the 2017 tax return, Cortes falsely reported that Customers 25 and 26 contributed $6,534 in cash to charity. Customers 25 and 26 did not donate that much to charity, and did not provide that amount to Cortes. On the Schedule A, Cortes reported the mortgage interest that Customers 25 and 26 paid in 2017, but did not report the property taxes that Customers 25 and 26 paid, even though the property taxes were reported on the Form 1098 provided (along with the mortgage interest, which Cortes reported on the tax return). On the Schedule C attached to the tax return, Cortes falsely reported that Customer 26 owned a business, not identified by name or type of business, through which Customer 26 had no sales and received no gross receipts, but incurred $31,299 in expenses, all for purported car and truck expenses. Customer 26 did not incur any such purported business expenses and did not inform Cortes that he incurred these expenses (for a non-existent business).

111. By reporting the fabricated charitable contributions on the Schedule A and the phony business expenses on the Schedule C, Cortes claimed a phony EITC in the amount of $452 and a bogus refund of $6,602 on the 2017 tax return of Customers 25 and 26. Cortes did not give Customers 25 and 26 a complete copy of the tax return, but only gave them the first pages of the Form 1040 without any forms or schedules attached. Customers 25 and 26 were charged over $500 to have the tax return prepared.

**Customers 27 and 28**

112. Robenson prepared the 2017 tax return of Customers 27 and 28 of Orlando, Florida. Customers 27 and 28 provided Robenson with copies of their IDs, Forms W-2, social

35

security cards, information about moving and storage expenses, and information about medical expenses. Robenson asked Customers 27 and 28 how far they commute to work, which is a nondeductible expense. Neither Customer 27 nor Customer 28 owned a business in 2016.

113. Customers 27 and 28 were both employed in 2017, and received wages totaling $71,213. On the Schedule A attached to the return, Robenson falsely reported that Customers 27 and 28 incurred unreimbursed employee business expenses in the amount of $25,391, including $2,400 for a cell phone, $2,148 for work clothes, and $854 for supplies. Customers 27 and 28 did not incur these expenses and did not provide these amounts to Robenson. In 2017, Customers 27 and 28 incurred around $5,000 in medical expenses, an amount they provided to Robenson. Robenson, however, falsely reported that Customers 27 and 28 incurred $11,771 in medical expenses. Robenson also falsely reported that Customers 27 and 28 donated $4,211 in cash to charity in 2017. By reporting the fabricated expenses on the Schedule A, Robenson claimed a bogus refund of $2,260 on the 2017 tax return of Customers 27 and 28.

114. Customers 27 and 28 were both employed in 2016, and received wages totaling $51,074. On the Schedule C attached to the 2016 tax return, Robenson falsely reported that Customer 27 owned a business, not identified by name or type of business, through which Customer 27 had no sales and received no gross receipts, but incurred $30,058 in expenses, including $20,498 for car and truck expenses, $1,123 for supplies, $5,112 for meals and entertainment, and $3,325 for utilities. Customer 27 did not own a business, did not incur any such purported business expenses, and did not inform Robenson that he incurred these expenses. As a result, Robenson claimed a bogus refund of $2,347 on the 2016 tax return of Customers 27 and 28. Robenson did not review the completed tax returns with Customers 27 and 28. In 2018,

Customers 27 and 28 met with an accountant to file amended tax returns to remove the false claims reported without their knowledge by Robenson.

### Customers 29 and 30

115. Claudio prepared the 2017 tax return of Customers 29 and 30 of Orlando, Florida. Customers 29 and 30 were both employed in 2017, and received wages totaling $66,443.

116. On the Schedule A attached to the return, Claudio falsely reported that Customers 29 and 30 incurred unreimbursed employee business expenses in the amount of $26,042, or over 39% of their wages, including $1,625 for a cell phone and $4,284 for uniforms; the remaining purported $20,133 in job-related expenses was not categorized on the tax return. Claudio also falsely reported that Customers 29 and 30 incurred $10,366 in medical and dental expenses, $3,331 in general sales taxes, and $5,285 in charitable contributions. By reporting the fabricated expenses on the Schedule A, Claudio claimed a bogus refund of $2,358 on the 2017 tax return of Customers 29 and 30.

### Customer 31

117. Michael Harden prepared the 2017 tax return of Customer 31 of Orlando, Florida. Customer 31 received wages totaling $37,381 in 2017. On the Schedule A attached to the return, Michael Harden falsely reported that Customer 31 incurred unreimbursed employee business expenses in the amount of $10,754, or over 28% of his wages, including $720 for a cell phone; the remaining purported $10,034 in job-related expenses was not categorized on the tax return. By reporting the fabricated expenses on the Schedule A, Michael Harden claimed a bogus refund of $3,067 on Customer 31's 2017 tax return.

**Reporting False Tax Withholdings Far Exceeding Amounts Actually Withheld
and Reported on Forms W-2**

118.    The Defendants often prepare tax returns on which they falsely report the amount

of taxes withheld from customers' income far in excess of the taxes actually withheld as reported

on Forms W-2 issued to the customers by their employers.

119.    Employers are required to compute and withhold from their employees' wages

federal income, social security, and Medicare taxes.  At the end of a tax year, the amount

withheld from an employee's wages is a fixed and certain number.  The final amount withheld is

typically reported on, and corroborated by, a Form W-2.  The Form W-2 is sent to the taxpayer

from their employer and later filed by the taxpayer or his tax preparer along with their tax return.

120.    The Defendants disregard the federal tax withholdings reported on the Form W-2

and instead report a far larger amount on the tax return.  By falsely claiming that a larger amount

of tax was withheld from customers' income, the Defendants falsely claim a larger refund of

taxes allegedly withheld.  Fabricating the withholding amounts reported on customers' tax

returns in contravention of the amounts reported on customers' Forms W-2 constitutes outright

fraud and is a serious obstruction of tax administration.

121.    Frequently, in connection with reporting fabricated wages and withholdings, the

Defendants also falsely claim that the customer had a business through which the customer

incurred expenses, resulting in a loss.  The bogus business loss that the Defendants report on the

customer's tax return results in the return claiming a larger bogus refund of the phony

withholdings reported on the return.

**Customer 32**

122.    For example, Erotida Harden prepared the 2016 federal income tax return of

38

Customer 32 of Altamonte Springs, Florida. Customer 32 received wages totaling $1,526 in 2016, as reported to the IRS on a Form W-2.

123.    On Customer 32's 2016 tax return, Erotida Harden falsely reported that Customer 32 received wages totaling $2,801 ($1,275 more than reported on her Form W-2) and had taxes withheld in the amount of $1,613 ($1,578 more than reported on her Form W-2). By falsely claiming $1,613 in taxes purportedly withheld, Erotida Harden claimed a larger bogus refund of $7,131 on Customer 32's 2016 tax return.

### Customer 33

124.    Michael Harden prepared the 2015 and 2016 federal income tax returns of Customer 33 of Apopka, Florida. In 2015, Customer 33 received income totaling $3,724, with no income taxes withheld, as reported to the IRS on a Form 1099. On Customer 33's 2015 tax return, Michael Harden falsely reported that Customer 33 received wages totaling $31,527 and had taxes withheld in the amount of $5,167. By claiming this fabricated amount of tax withheld from fabricated reported wages, Michael Harden falsely claimed a bogus refund in the amount of $5,333.

125.    In 2016, Customer 34 received wages totaling $3,741 and had income taxes withheld in the amount of $86, as reported to the IRS on a Form W-2. On Customer 34's 2016 tax return, Michael Harden falsely reported that Customer 34 received wages totaling $32,119 ($28,378 more than reported on his Form W-2) and had taxes withheld in the amount of $5,192 ($5,106 more than reported on his Form W-2). Michael Harden also falsely reported on the Schedule C attached to the tax return that Customer 34 owned a business, not identified by name or type of business, through which he had no sales and received no gross receipts, but incurred expenses totaling $12,185, all for purported car and truck expenses. By claiming this fabricated

amount of tax withheld, and reporting the phony wages offset by a fabricated business loss, Michael Harden claimed a bogus refund of $4,219 on Customer 34's 2016 tax return.

### Customer 35

126.    Williams prepared the 2017 federal income tax return of Customer 35 of Orlando, Florida. In 2017, Customer 35 received wages totaling $42,762 and had taxes withheld in the amount of $3,569, as reported to the IRS on a Form W-2. On Customer 35's 2017 tax return, Williams falsely reported that Customer 35 received wages totaling $47,968 ($5,206 more than reported on her Form W-2) and had taxes withheld in the amount of $6,905 ($3,345 more than reported on her Form W-2). Williams also falsely reported that Customer 35 owned a business, not identified by name or type of business, through which Customer 35 had no sales and received no gross receipts, but incurred expenses totaling $13,138, all for purported car and truck expenses.  By falsely reporting higher wages and higher tax withholdings, and offsetting the fabricated wages with a phony business loss, Williams claimed a phony EITC in the amount of $766 and bogus refund of $6,732 on Customer 35's 2017 tax return.

### Customer 36

127.    Robenson prepared the 2017 federal income tax return of Customer 36 of Orlando, Florida.  In 2017, Customer 36 received wages totaling $35,728 and had taxes withheld in the amount of $452, as reported to the IRS on a Form W-2. On Customer 36's 2017 tax return, Robenson falsely reported that Customer 36 had taxes withheld from her wages in the amount of $3,282 ($2,930 more than reported on her Form W-2). Robenson also falsely reported that Customer 36 owned a business, not identified by name or type of business, through which Customer 36 had no sales and received no gross receipts, but incurred expenses totaling $22,834, including $17,594 for car and truck expenses, $3,800 for meals and entertainment, and $1,440

for utilities. Robenson also falsely reported that Customer 36 purchased 400 gallons of nontaxable, undyed diesel fuel. Assuming, conservatively, that the gas was purchased at $2.00 per gallon, Customer 36 would have incurred a gas expense in the amount of $800. Robenson claimed a bogus fuel tax credit in the amount of $97 (discussed in paragraphs 140-143, *infra*). By falsely reporting higher tax withholdings, the phony business loss, and the phony fuel tax credit, Robenson claimed a bogus refund of $3,230 on Customer 36's 2017 tax return.

### Customer 37

128.    Michael Harden prepared the 2017 federal income tax return of Customer 37 of Lakeland, Florida. In 2017, Customer 37 received wages totaling $25,959 and had taxes withheld in the amount of $100, as reported to the IRS on Forms W-2. On Customer 37's 2017 tax return, Michael Harden falsely reported that Customer 37 had taxes withheld from her wages in the amount of $3,001 ($2,901 more than reported on her Forms W-2). By falsely reporting higher tax withholdings, Michael Harden claimed a bogus refund of $8,603 on Customer 37's 2017 tax return.

### Customers 38 and 39

129.    Erotida Harden prepared the 2017 federal income tax return of Customers 38 and 39 of Ocoee, Florida. In 2017, Customers 38 and 39 received wages totaling $24,354 and had taxes withheld in the amount of $760, as reported to the IRS on a Form W-2. On the 2017 tax return, Erotida Harden falsely reported that Customer 38 had taxes withheld from her wages in the amount of $2,960 ($2,200 more than reported on her Form W-2). By falsely reporting higher tax withholdings, Erotida Harden claimed a bogus refund of $9,482 on the 2017 tax return of Customers 38 and 39.

**Customer 40**

130.    Erotida Harden prepared the 2017 federal income tax return of Customer 40 of

Orlando, Florida.  In 2017, Customer 40 received wages totaling $47,009 and had taxes withheld

in the amount of $1,393 as reported to the IRS on Forms W-2. On the 2017 tax return, Erotida

Harden falsely reported that Customer 40 had taxes withheld from her wages in the amount of

$3,294 ($1,901 more than reported on her Forms W-2).

131.    On the Schedule A attached to the tax return, Erotida Harden falsely reported that

Customer 40 incurred $18,651 in unreimbursed employee business expenses, a fabricated

amount exceeding 39% of Customer 40's wages. Erotida Harden also falsely reported that

Customer 40 purchased 4,496 gallons of nontaxable, undyed diesel fuel.  Assuming,

conservatively, that the gas was purchased at $2.00 per gallon, Customer 40 would have incurred

a gas expense in the amount of $8,992.  Erotida Harden thereby claimed a bogus fuel tax credit

(discussed in paragraphs 140-143, *infra*) in the amount of $1,093. By falsely reporting higher tax

withholdings, claiming fabricated job expenses, and claiming a phony fuel tax credit, Erotida

Harden claimed a bogus refund of $5,664 on Customer 40's 2017 tax return.

**Customer 41**

132.    Cortes prepared the 2017 federal income tax return of Customer 41 of Orlando,

Florida.  In 2017, Customer 41 received wages totaling $23,033 and had taxes withheld in the

amount of $2,053 as reported to the IRS on a Form W-2. On the 2017 tax return, Cortes falsely

reported that Customer 41 had taxes withheld from her wages in the amount of $3,990 ($1,937

more than reported on her Form W-2). Cortes also falsely reported that Customer 41 owned a

business, not identified by name or type of business, through which Customer 41 had no sales

and received no gross receipts, but incurred expenses totaling $8,688, all for purported car and

truck expenses. By falsely reporting higher tax withholdings, and reporting a phony business loss, Cortes claimed a phony EITC in the amount of $3,400 and a bogus refund of $8,390 on Customer 41's 2017 tax return.

### Customers 42 and 43

133. Claudio prepared the 2017 federal income tax return of Customers 42 and 43 of Orlando, Florida. In 2017, Customers 42 and 43 received wages totaling $18,604 and had taxes withheld in the amount of $824, as reported to the IRS on Forms W-2. On the 2017 tax return, Claudio falsely reported that Customers 42 and 43 received wages totaling $18,732 ($128 more than reported on their Forms W-2) and had taxes withheld in the amount of $1,057 ($233 more than reported on their Forms W-2). Claudio also falsely reported that Customer 42 owned a business, not identified by name or type of business, through which Customer 42 had no sales and received no gross receipts, but incurred expenses totaling $8,130, including $8,015 for car and truck expenses and $115 for uniforms. By falsely reporting higher tax withholdings, and reporting a phony business loss, Claudio claimed a bogus refund of $1,043 on the 2017 tax return of Customers 42 and 43.

### Customers 13 and 14 (con't)

134. As discussed in paragraphs 83 and 84, *supra*, Michael Harden prepared the 2016 tax returns of Customers 13 and 14. In 2016, Customer 13 received wages totaling $39,457, and $1,300 in tax was withheld from those wages. Michael Harden falsely reported that Customer 13 received wages totaling $28,460, from which $3,181 in taxes were withheld, or $1,881 more than actually withheld and reported on the Form W-2. Michael Harden claimed a bogus refund of $3,881 on Customer 13's 2016 tax return. In 2016, Customer 14 received wages totaling $19,375, from which $981 was withheld in taxes, as reported on her Form W-2. Michael Harden

falsely claimed on the tax return that $1,981 (exactly $1,000 more than reported on her Form W-2) in taxes were withheld from Customer 14's wages. By falsely reporting higher tax withholdings, along with other false claims (discussed in paragraph 84, *supra*), Michael Harden claimed a bogus refund of $2,583 on Customer 14's 2016 tax return.

**Improperly Preparing and Filing Returns based on Pay Stubs**

135.    The Defendants also prepare and file federal income tax returns using customers' end-of-year pay stubs and then file their customers' tax returns without valid Forms W-2.

136.    Federal tax returns for wage earners must be prepared using Forms W-2. Using pay stubs to prepare and file tax returns is improper and violates IRS rules. Moreover, end-of-year pay stubs frequently omit income and distributions that are shown on employer-issued Forms W-2. Thus, preparing and filing federal income tax returns based on information from end-of-year pay stubs inevitably results in errors and omissions on federal tax returns, which necessarily interferes with the administration and enforcement of the internal revenue laws.

137.    The Defendants know that using paystubs to prepare and file returns violates IRS rules and regulations because in order to participate in the IRS's electronic filing program, all electronic filers must acknowledge that they will comply with the IRS's requirements, which expressly prohibit filing returns prepared with pay stubs and without genuine Forms W-2.

138.    The Defendants begin soliciting customers in December by falsely telling customers that their returns can be prepared using their most recent paystub. Advanced Tax Services opens before the end of the tax year, before customers know how much income they earned and taxes they owe for the year, and before employers are able to issue Forms W-2 to their employees. Forms W-2 are not available to employees before the end of the calendar tax year, and tax returns cannot be filed before January of the processing year.

139.    By preparing tax returns before the end of the tax year, the Defendants unfairly solicit business before competitors.

## Fraudulent Fuel Tax Credits

140.    The Defendants prepare and file federal income tax returns for customers on which they improperly claim false or fraudulent fuel tax credits using IRS Form 4136, "Credit for Federal Tax Paid on Fuels." The fuel tax credit is available only to taxpayers who operate farm equipment or other off-highway business vehicles. Moreover, the equipment or vehicles using the fuel must not be registered for highway uses. The Defendants claim the fuel tax credit for fabricated and non-qualifying fuel purchases.

141.    Internal Revenue Code section 6421(a) provides a tax credit for fuel used in an off-highway business use. Off-highway business use is any off-highway use of fuel in a trade or business or in an income-producing activity where the equipment or vehicle is not registered and not required to be registered for use on public highways. Examples of off-highway business fuel use include: (1) in stationary machines such as generators, compressors, power saws, and similar equipment; (2) for cleaning purposes; and (3) in forklift trucks, bulldozers, and earthmovers.

142.    A highway vehicle is any "self-propelled vehicle designed to carry a load over public highways, whether or not it is also designed to perform other functions." A public highway includes any road in the United States that is not a private roadway. This includes federal, state, county, and city roads and streets. These highway vehicles are not eligible for the fuel tax credit. The following highway vehicles are not eligible for the fuel tax credit: passenger automobiles, motorcycles, buses, and highway-type trucks and truck tractors.

143.    In short, the fuel tax credit does not apply to passenger cars or other vehicles that are registered or required to be registered to drive on public highways.

144.   The Defendants claim the fuel tax credit for fabricated and non-qualifying fuel purchases. In 2016, 2017, and 2018, the Defendants claimed the fuel tax credit on at least the following number of tax returns:

| Preparer | Prepared in 2016 | Prepared in 2017 | Prepared in 2018 |
|---|---|---|---|
| Certified Taxes (Total) | 63 | 315 | 274 |
| Erotida Harden | 0 | 7 | 8 |
| Aida Cortes | 0 | 5 | 2 |
| Michael Harden | 37 | 113 | 147 |
| Yahaira Claudio | 1 | 0 | 1 |
| Tamika Robenson | N/A | 113 | 91 |
| Natasha Williams | 0 | 22 | 17 |

145.   The amount of the fuel tax credit is determined by, and directly correlates to, the quantity of gallons of fuel purportedly purchased for off-highway business use.  Many of the tax returns claiming the fuel tax credit that are prepared at Certified Taxes claim the credit in the exact same amount.  Of the 274 tax returns prepared in 2018 claiming the fuel tax credit, 59 tax returns claimed the credit in the amount of $700; 25 tax returns claimed the credit in the amount of $583; and 41 tax returns claimed the credit in the amount of $505.

**Customer 44**

146.   For example, Williams prepared the 2017 federal income tax return of Customer 44 of Orlando, Florida. According to IRS records, in 2017, Customer 44 received wages totaling $1,075 through a staffing agency, and had taxes withheld in the amount of $100. Williams falsely reported that Customer 44 purchased 2,880 gallons of nontaxable, undyed kerosene (the exact same amount of fuel as Customers 45 and 46).  Assuming, conservatively, that the fuel was purchased at $2.00 per gallon, Customer 44 would have incurred a fuel expense (purportedly

46

related to a job Customer 44 worked through a staffing agency) in the amount of $5,760.

Williams thus claimed a bogus fuel tax credit in the amount of $700. On the tax return, Williams

also falsely reported that Customer 44 received wages totaling $21,076 ($20,001 more than

reported on the Form W-2 Customer 44's employer provided to the IRS) and had $2,100 in taxes

withheld ($2,000 more than reported on the Form W-2). Williams also falsely reported on the

Schedule C attached to the tax return that Customer 44 owned a business, not identified by name

or type of business, through which Customer 44 had no sales and received no gross receipts, but

incurred expenses totaling $14,089, all for purported car and truck expenses. The phony reported

business loss on the Schedule C offset the fabricated wages reported (as part of the claim for

fabricated tax withholdings) and thus falsely reduced Customer 44's taxable income to zero. By

claiming the bogus fuel tax credit and $2,000 in fabricated withholdings, and then falsely

reducing Customer 44's reported taxable income to zero, Williams claimed a phony EITC in the

amount of $510 and a bogus refund of $3,310 on Customer 44's 2017 tax return.

### Customer 45

147.     Williams prepared the 2017 federal income tax return of Customer 45 of Orlando,

Florida. In 2017, Customer 45 was not employed. Williams reported on the Schedule C that

Customer 45 purportedly owned a "hair" business operated in her home in 2017 that had a net

profit of $15,214. Williams falsely reported that Customer 45 purchased 2,880 gallons of

nontaxable, undyed diesel fuel (the exact same amount of fuel as Customers 44 and 46).

Assuming, conservatively, that the fuel was purchased at $2.00 per gallon, Customer 45 would

have incurred a fuel expense (purportedly related to cutting or styling hair) in the amount of

$5,760. Williams thus claimed a bogus fuel tax credit in the amount of $700 and a bogus refund

of $5,837 on Customer 45's 2017 tax return.

**Customer 46**

148. Williams prepared the 2017 federal income tax return of Customer 46 of Orlando, Florida. In 2017, Customer 46 received wages totaling $211. Williams reported on the Schedule C that Customer 46 purportedly owned a "hair" business operated in her home in 2017 that had a net profit of $15,258. Williams falsely reported that Customer 46 purchased 2,880 gallons of nontaxable, undyed diesel fuel (the exact same amount of fuel as Customers 44 and 45). Assuming, conservatively, that the fuel was purchased at $2.00 per gallon, Customer 46 would have incurred a fuel expense (purportedly related to cutting or styling hair) in the amount of $5,760. Williams thus claimed a bogus fuel tax credit in the amount of $700 and a bogus refund of $6,571 on Customer 46's 2017 tax return.

**Customer 47**

149. Erotida Harden prepared the 2016 and 2017 federal income tax returns of Customer 47 of Winter Park, Florida. In 2017, Customer 47 was not employed, but Erotida Harden reported that he received $11,144 through a "promotions" business that he purportedly owned. Erotida Harden then falsely reported that Customer 47 purchased 4,408 gallons of nontaxable, undyed diesel fuel. Assuming, conservatively, that the gas was purchased at $2.00 per gallon, Customer 47 would have incurred a gas expense in the amount of $8,816. Erotida Harden claimed a bogus fuel tax credit in the amount of $1,071. Thus, Erotida Harden claimed a bogus refund of $3,896 on Customer 47's 2017 tax return.

150. In 2016, Customer 47 received wages totaling $39,472. On the Schedule C attached to the return, Erotida Harden falsely reported that Customer 47 owned a business, not identified by name or type of business, through which Customer 47 had no sales and received no gross receipts, but incurred expenses totaling $12,345, all for purported car and truck expenses.

48

Erotida Harden thus claimed a phony EITC in the amount of $1,945 and a bogus refund of $6,961 on Customer 47's 2016 tax return.

### Customer 48

151.    Robenson prepared the 2017 federal income tax return of Customer 48 of Orlando, Florida. In 2017, Customer 48 received wages reported on seven Forms W-2 totaling $5,875; however, the tax return reported income totaling $4,723 because the income from one of the Forms W-2 was not reported on the return. Robenson falsely reported that Customer 48 purchased 3,997 gallons of nontaxable, undyed diesel fuel. Assuming, conservatively, that the gas was purchased at $2.00 per gallon, Customer 48 would have incurred a gas expense in the amount of $7,994. Robenson claimed a bogus fuel tax credit in the amount of $971 and a bogus refund of $1,306 on Customer 48's 2017 tax return.

### Customer 49

152.    Michael Harden prepared the 2016 federal income tax return of Customer 49 of Orlando, Florida. In 2016, Customer 49 received wages of $19,991 working at Jiffy Lube. On Customer 49's 2016 tax return, Michael Harden then falsely reported that Customer 49 purchased 768 gallons of nontaxable, undyed diesel fuel. Assuming, conservatively, that the gas was purchased at $2.00 per gallon, Customer 49 would have incurred a gas expense in the amount of $1,536. Michael Harden claimed a bogus fuel tax credit in the amount of $187. On the Schedule C attached to the return, Michael Harden falsely reported that Customer 49 owned a business, not identified by name or type of business, through which Customer 49 had no sales and received no gross receipts, but incurred expenses totaling $6,322, all for purported car and truck expenses. Michael Harden thus claimed a phony EITC in the amount of $3,373 and a bogus refund of $4,775 on Customer 49's 2016 tax return.

49

**Customer 50**

153.    Michael Harden prepared the 2017 federal income tax return of Customer 50 of

Orlando, Florida. According to IRS records, in 2017, Customer 50 received wages reported on a

Form W-2 in the total amount of $287, and income reported on two Forms 1099 totaling $4,395.

On the Schedule C attached to the tax return, Michael Harden reported that Customer 50

purportedly received net profits through a "car detailing" business (the Forms 1099 showing the

non-wage income that Customer 50 received are not related to a car detailing business) in the

amount of $9,755. Michael Harden falsely reported that Customer 50 purchased 3,920 gallons of

nontaxable, undyed diesel fuel. Assuming, conservatively, that the fuel was purchased at $2.00

per gallon, Customer 50 would have incurred a fuel expense (purportedly related to detailing

cars) in the amount of $7,840. Michael Harden thus claimed a bogus fuel tax credit in the

amount of $953 and a bogus refund of $2,661 on Customer 50's 2017 tax return.

**Customers 13 and 14 (con't)**

154.    As discussed in paragraphs 81-82, *supra*, Michael Harden prepared the 2017 joint

tax return of Customers 13 and 14. Michael Harden also prepared Customer 13's 2016 tax

return.

155.    In 2017, Michael Harden reported on the tax return that Customers 13 and 14

received wages totaling $32,941. On the 2017 tax return, Michael Harden falsely reported that

Customers 13 and 14 purchased 4,800 gallons of nontaxable, undyed diesel fuel. Assuming,

conservatively, that the fuel was purchased at $2.00 per gallon, Customers 13 and 14 would have

incurred a fuel expense in the amount of $9,600. Michael Harden thus claimed a bogus fuel tax

credit in the amount of $1,166 on the 2017 tax return of Customers 13 and 14.

156.     In 2016, Customer 13 received wages totaling $28,460.  On Customer 13's 2016 tax return, Michael Harden falsely reported that Customer 13 purchased 2,880 gallons of nontaxable, undyed diesel fuel (the exact same amount claimed on the tax returns described in paragraphs 146-148, *supra*).  Assuming, conservatively, that the fuel was purchased at $2.00 per gallon, Customer 13 would have incurred a fuel expense in the amount of $5,760.  Michael Harden thus claimed a bogus fuel tax credit in the amount of $700 on Customer 13's 2016 tax return.

### Bogus Education Credits

157.     The Defendants, and the tax return preparers acting at their direction or with their knowledge and consent, also claim bogus education expenses and falsely claim refundable education credits, including the American opportunity tax credit, on customers' federal income tax returns.  Unlike many tax credits, a refundable tax credit entitles qualifying taxpayers to receive refunds even if they have no tax liability. The Defendants, and the tax return preparers acting at their direction or with their knowledge and consent, claim false education credits on the tax returns of customers who did not attend college and had no qualifying education expenses, in order to generate a larger bogus refund.

158.     Cortes self-prepared her 2012 federal income tax return.  Cortes falsely claimed that she incurred $2,499 in education-related expenses.  According to records provided to the IRS by South University, in 2012, Cortes' tuition was $390, and she received $28 in scholarships or grants.  Thus, her out-of-pocket expenses were far less than the $2,499 that she falsely claimed on her tax return. By claiming this fabricated amount, Cortes claimed a bogus American opportunity tax credit in the amount of $850 on her 2012 tax return.

51

159.    Erotida Harden prepared the 2010 federal income tax return of co-defendant Yahaira Claudio.  Claudio did not incur any qualifying education expenses in 2010.  On Claudio's 2010 tax return, Erotida Harden falsely reported that Claudio incurred education-related expenses in the maximum reportable amount of $4,000, and thereby claimed a bogus American opportunity tax credit in the maximum amount of $1,000.  As a result, Erotida Harden claimed a bogus refund of $4,678 on Claudio's 2010 tax return.

### Customer 51

160.    Michael Harden prepared the 2016 federal income tax return of Customer 51 of Orlando, Florida.  According to records provided to the IRS by Columbia College, in 2016, Customer 51's tuition was $7,620, and he received $6,218 in scholarships or grants.  However, Michael Harden falsely reported on the tax return that Customer 51 incurred $4,000 in out-of-pocket expenses.  By claiming this fabricated amount, Michael Harden claimed a bogus American opportunity tax credit in the amount of $1,000, and a bogus nonrefundable education credit in the amount of $603, on Customer 51's 2016 tax return.

161.    In addition, in 2016, Customer 51 received wages in the amount of $20,446 in 2016, and had $644 in taxes withheld, as reported to the IRS on a Form W-2.  Michael Harden falsely reported on the tax return that Customer 51 had taxes withheld in the amount of $6,645 ($6,001 more than reported on his Form W-2). Michael Harden also falsely reported that Customer 51 purchased 2,080 gallons of nontaxable, undyed diesel fuel.  Assuming, conservatively, that the gas was purchased at $2.00 per gallon, Customer 51 would have incurred a gas expense in the amount of $4,160.  Michael Harden claimed a bogus fuel tax credit in the amount of $505. Thus, Michael Harden claimed a bogus refund of $11,166 on Customer 51's 2016 tax return.

**Customer 14 (con't)**

162.    As discussed in paragraphs 84 and 136, *supra*, Michael Harden prepared the 2016

tax return of Customer 14.  In 2016, Customer 14 received scholarships or grants towards higher

education expenses in the amount of $1,056, as reported on the Form 1098-T issued by Broward

College.  No expenses were reported on the Form 1098-T.  On Customer 14's 2016 tax return,

Michael Harden falsely reported the scholarships or grants that Customer 14 received (identified

on the Form 1098-T) as qualified education *expenses* that Customer 14 incurred, and thus falsely

claimed a bogus American opportunity tax credit in the amount of $422.

### Unconscionable and Undisclosed Fees

163.    The Defendants charge unconscionably high fees to prepare tax returns, which are

typically charged without customers' knowledge.  The Defendants charge these high fees to

prepare and file false tax returns with unnecessary and bogus forms and schedules attached,

when they should have honestly prepared a basic Form 1040 tax return.

164.    The Defendants intentionally deceive customers regarding the fees charged for the

preparation of tax returns.  The Defendants do not disclose the full amount of the fee and, when

having the customer sign forms showing the fee, cover the fee with a hand or a piece of paper

and do not explain to the customer what the customer is signing.

165.    The Defendants charge additional fees for each form and schedule (such as a

Schedule C or a Form 8863 for an education credit) attached to the Form 1040 tax return.  The

Defendants charge separate fees for forms and schedules such as the electronic filing

authorization (Form 8879) which is required for e-filing, the EITC qualifying child form

(Schedule EIC), and the related EITC due diligence checklist (Form 8867), which must be

completed in connection with a claim for the EITC. These fees result in a total tax return preparation fee much higher than the amount advertised, often $1,000 or more.

166.    The high fees charged (and the fee structure, which encourages the addition of unnecessary and often improper forms and schedules to the Form 1040) are a strong incentive for the Defendants to prepare and file false or fraudulent tax returns claiming excessive refunds based on bogus claims and associated forms and schedules.

167.    Because the Defendants target low-to-moderate-income individuals, the high fees frequently can pose a significant financial hardship for customers. Customers may be required to pay back the improper refunds that they receive. Because the Defendants deduct their high fees directly from her customers' refunds, customers required to return these improper refunds to the government must also return the portion subtracted as fees. Thus, customers are then out-of-pocket the high fees that the Defendants charged.

168.    The Defendants also routinely and intentionally fail to disclose to customers all fees charged. The Defendants present forms to customers to sign, including a form acknowledging the fees charged, without allowing the customer to closely review or understand the forms they are signing. Alternatively, the Defendants tell customers one amount for fees and then later increase the fees without the customers' knowledge or consent. Customers are often surprised to learn that the refund requested on their return is hundreds if not thousands of dollars more than the refund amount that they received after the fees were deducted.

169.    The Defendants' fees are not paid by customers at the time of the preparation of their tax returns, but instead are subtracted from the customers' tax refund. By doing so, the Defendants are able to conceal from unsuspecting customers the actual amount that the customers pay to have their tax return prepared. Customers typically do not discover that the fees

charged are much more than the customers anticipated for the preparation of their tax return until

the customers receive a refund that is much less than quoted by the tax return preparer, after the

Defendants subtracted their high fees.

170.    The Defendants' practice of charging unconscionable and undisclosed fees

interferes with the administration and enforcement of the Internal Revenue laws. Such behavior

erodes consumer confidence in tax return preparers and dissuades taxpayers from seeking

professional assistance with the preparation of their federal tax returns.

**Failure to Provide Customers with Copies of their Completed Tax Returns
in Violation of 26 U.S.C. § 6107(a)**

171.    The Defendants fail to provide customers with copies of their completed tax

returns. The completed tax return, filed with the IRS, shows the refund that the Defendants are

claiming for the customer. For example, a customer who is provided a copy of a tax return

showing the actual tax refund claimed is able to determine the amount of fees that the

Defendants charged by subtracting the amount of the refund that the customer actually receives

from the amount of the refund claimed on the tax return. The Defendants' failure to provide a

copy of a customer's completed tax return is part of the strategy to conceal the actual fees from

their customers.

172.    Failing to provide a customer with a copy of the completed tax return also violates

26 U.S.C. § 6107(a), which requires that a tax return preparer "shall furnish a completed copy of

[a tax return or claim for refund] to the taxpayer not later than the time such return or claim is

presented for such taxpayer's signature."

173.    Customers who do receive a copy of the tax return often receive only the first two

pages of the Form 1040, but not the other forms filed with the return, such as Forms Schedule C,

Forms Schedule A, and Forms 2106, "Employee Business Expenses." This is because the Defendants make false claims on these forms and, to conceal the claims from customers, do not provide customers with copies of these completed forms.

### Failure to Identify the Actual Preparer of Customers' Tax Returns in Violation of 26 U.S.C. §§ 6695(b) and 6695(c)

174.    The Defendants prepared tax returns for customers on which they did not identify themselves as the paid preparer. For example, as discussed in paragraph 29, *supra*, Erotida Harden prepared tax returns on which she reported Cortes' PTIN as the paid preparer's PTIN. Cortes prepared the 2016 tax return of Customers 9 and 10, but Claudio is identified as the paid preparer. Similarly, Cortes prepared the 2017 federal income tax return of Customers 19 and 20, but Claudio is identified as the paid preparer.

175.    A tax return preparer who fails to sign a tax return that he or she preparers violates 26 U.S.C. § 6695(b). A tax return preparer, or employer of a tax return preparer, who fails to report an identifying number of the tax return preparer or the employer on a tax return that the preparer or an employee prepares, violates 26 U.S.C. § 6695(c).

176.    Failing to identify themselves as the paid preparers on tax returns is part of the Defendants' attempts to conceal their tax return preparation activities from government investigators.

### Harm Caused by the Defendants

177.    The Defendants' preparation of false and fraudulent tax returns at their tax return preparation stores, false and misleading statements directed to customers and potential customers, and culture favoring volume and ill-gotten profits over accuracy and integrity have harmed the public and the United States Treasury. These practices harm the public because the

Defendants and many of their preparers prepare false or fraudulent tax returns that understate their customers' correct income tax liabilities and illegally cause customers to incorrectly report their federal tax liabilities and underpay their taxes.

178. The Defendants' conduct harms the United States Treasury by causing lost tax revenue.

179. The Defendants' customers have been harmed because they relied on the Defendants and their tax preparation stores to prepare proper tax returns. Instead, customers' tax returns substantially understated their correct tax liabilities after paying unconscionably high fees to have their tax returns prepared. As a result, many customers, who are often low-income taxpayers, now face large income tax debts and may be liable for penalties and interest.

180. Customers are harmed by the unconscionably high and frequently undisclosed fees tied to anticipated tax refunds. These fees are subtracted from the erroneous refunds that result from the false or fraudulent tax return preparation perpetrated by the Defendants and their employees acting at their direction and with their knowledge and consent. When the IRS conducts audits or examinations of customers and seeks repayment of these erroneous refunds, the customers are liable for the repayment of those refunds. Not only do customers face the hardship associated with repayment of erroneous refunds resulting from the Defendants' greed at others' expense, but customers may also have to repay the portion of the refund that the Defendants subtracted in fees. Customers may also have to pay additional fees to other tax return preparers to file amended tax returns to correct the false or fraudulent tax returns prepared and filed by the Defendants and their employees acting at their direction and with their knowledge and consent.

57

181. The Defendants' misconduct further harms the United States and the public by requiring the IRS to devote some of its resources to detecting their false claims on tax returns and assessing and collecting lost tax revenues from the Defendants' customers. Consequently, identifying and recovering all lost tax revenues resulting from the Defendants' activities may be impossible.

182. The Defendants' misconduct also harms the United States and the public because the Defendants train tax preparers, who have no previous tax return preparation experience, on how to prepare tax returns that make false or fraudulent claims. These Defendant-trained tax preparers, in turn, often open their own tax preparation stores using the Defendants' investments of the ill-gotten gains that the Defendants received for the preparation of tax returns, or using the income that the preparers received from the Defendants for the preparation of tax returns making false or fraudulent claims. In this manner, the preparation of false or fraudulent tax returns spreads like a wildfire. Harden and Cortes, for example, learned how to prepare tax returns at LBS while working for Walner Gachette (who has since been enjoined), subsequently worked at Advanced Tax Services where Harden trained tax return preparers (a company against which we are simultaneously filing suit), and now they (through Certified Taxes) own and operate at least 2 tax preparation stores.

183. The Defendants' conduct also causes intangible harm to honest tax return preparers who unfairly lose business to the Defendants due to their willingness to break the law. Customers often have their returns prepared at the Defendants' tax preparation stores because they promise the maximum refund, and deliver by fabricating claims and deductions on customers' tax returns.

184. Finally, the Defendants' misconduct harms the public at large by undermining public confidence in the federal tax system and encouraging widespread violations of the internal revenue laws.

185. The harm to the government and the public will continue, and likely increase, unless the Defendants are enjoined because—given the seriousness and pervasiveness of their illegal conduct—without an injunction, the Defendants are likely to continue preparing false and fraudulent federal income tax returns for customers. An injunction will serve the public interest because it will put a stop to the Defendants' illegal conduct and the harm that it causes the United States and its citizens.

## Count I
## Injunction under 26 U.S.C. § 7407

186. Section 7407 of the Internal Revenue Code authorizes a district court to enjoin a tax return preparer from engaging in conduct subject to penalty under 26 U.S.C. § 6694 or § 6695. Additionally, if the court finds that a preparer has continually or repeatedly engaged in such conduct, and the court further finds that a narrower injunction (i.e., prohibiting only that specific enumerated conduct) would not be sufficient to prevent that person's interference with the proper administration of the internal revenue laws, the court may enjoin the person from further acting as a tax return preparer. The prohibited conduct justifying an injunction includes, among other things, the following:

   a.   Engaging in conduct subject to penalty under 26 U.S.C. § 6694(a), which penalizes a return preparer who prepares a return or claim for refund that contains an unreasonable position and the return preparer knew (or reasonably should have known) of the position;

   b.   Engaging in conduct subject to penalty under 26 U.S.C. § 6694(b), which among other conduct, penalizes a return preparer who recklessly or intentionally disregards IRS rules or regulations;

      c.      Engaging in conduct subject to penalty under 26 U.S.C. § 6695(g), which penalizes a return preparer who fails to comply with the statutory due diligence requirements;

      d.      Guaranteeing the payment of any tax refund or the allowance of any tax credit; or

      e.      Engaging in any other fraudulent or deceptive conduct that substantially interferes with the proper administration of the internal revenue laws.

187.    Section 7701(a)(36) of the Internal Revenue Code defines tax return preparer to include not only the individual who physically prepares a tax return for compensation, but also anyone "who employs one or more persons" to prepare tax returns for compensation.

188.    Erotida Harden, Michael Harden, Aida Cortes, Yahaira Claudio, Tamika Robenson, Natasha Williams, and Certified Taxes, LLC, as shown above in paragraphs 5 through 185, are tax return preparers who have repeatedly and continually prepared or submitted returns or portions of returns (or employed or managed others who prepared or submitted returns or portions of returns) that contain unreasonable positions and substantially understate the liability for tax on the return. Erotida Harden, Michael Harden, Aida Cortes, Yahaira Claudio, Tamika Robenson, and Natasha Williams also advise, instruct, direct, and cause tax return preparers and employees to engage in tax fraud, and to prepare federal income tax returns asserting unreasonable, unrealistic, frivolous and fraudulent positions. Accordingly, Erotida Harden, Michael Harden, Aida Cortes, Yahaira Claudio, Tamika Robenson, and Natasha Williams knew (or should have known) of the unreasonable, unrealistic, frivolous and fraudulent positions.

189.    Erotida Harden, Michael Harden, Aida Cortes, Yahaira Claudio, Tamika Robenson, and Natasha Williams, and those acting in concert with them and at their direction,

have continually and repeatedly engaged in conduct subject to penalty under 26 U.S.C. § 6694

by preparing federal tax returns that understate her customers' liabilities based on unrealistic,

frivolous and reckless positions. Erotida Harden, Michael Harden, Aida Cortes, Yahaira Claudio,

Tamika Robenson, and Natasha Williams, through the actions described above in paragraphs 5

through 185, also recklessly or intentionally disregard IRS rules or regulations. Erotida Harden

and Aida Cortes, the owners of Certified Taxes, LLC, participated in and/or knew of the conduct

subject to penalty under 26 U.S.C. § 6694 engaged in by employees of Certified Taxes, LLC.

Certified Taxes, LLC, Erotida Harden's and Aida Cortes' entity, failed to provide reasonable and

appropriate procedures to prevent employees from engaging in conduct subject to penalty under

26 U.S.C. § 6694 and, conversely, encouraged the filing of false tax returns.

190.    Erotida Harden, Michael Harden, Aida Cortes, Yahaira Claudio, Tamika

Robenson, and Natasha Williams, and those acting in concert with them and at their direction,

have continually and repeatedly engaged in conduct subject to penalty under 26 U.S.C. § 6695.

The Treasury regulations promulgated under 26 U.S.C. § 6695(g) prohibit a return preparer from

claiming the EITC without first conducting proper due diligence and documenting his or her

compliance with the due diligence requirements. *See* 26 C.F.R. § 1.6695-2 (2011).  Not only do

Erotida Harden, Michael Harden, Aida Cortes, Yahaira Claudio, Tamika Robenson, and Natasha

Williams fail to conduct proper due diligence or comply with the due diligence requirements, but

they also advise, encourage, and cause tax return preparers and employees to circumvent the due

diligence requirements and to ignore or disregard the information provided by customers.

191.    Erotida Harden's, Michael Harden's, Aida Cortes', Yahaira Claudio's, Tamika

Robenson's, and Natasha Williams' failure to comply with the due diligence requirements for the

EITC violates Treasury Regulations and their willingness to falsify information to obtain the

EITC for her customers shows a reckless and/or intentional disregard of IRS rules and regulations.

192.    Erotida Harden, Michael Harden, Aida Cortes, Yahaira Claudio, Tamika Robenson, and Natasha Williams, and those acting in concert with them and at their direction, have continually and repeatedly prepared federal income tax returns that claim the EITC for customers, where Erotida Harden, Michael Harden, Aida Cortes, Yahaira Claudio, Tamika Robenson, and Natasha Williams, and those acting in concert with them and at their direction, have not conducted, let alone documented, the required due diligence procedures.

193.    Erotida Harden, Michael Harden, Aida Cortes, Yahaira Claudio, Tamika Robenson, and Natasha Williams fail to comply with 26 U.S.C. § 6695(a), which requires that a tax return preparer provide a copy of the completed tax return to the taxpayer.

194.    Erotida Harden, Michael Harden, Aida Cortes, Yahaira Claudio, Tamika Robenson, Natasha Williams, and Certified Taxes, LLC also fail to comply with 26 U.S.C. §§ 6695(b) and 6695(c), which require that a tax return preparer and a tax return preparation firm identify the actual paid preparer of the tax return.

195.    Erotida Harden's, Michael Harden's, Aida Cortes', Yahaira Claudio's, Tamika Robenson's, and Natasha Williams' continual and repeated violations of 26 U.S.C. §§ 6694 and 6695 fall within 26 U.S.C. § 7407(b)(1)(A), and thus are subject to an injunction under 26 U.S.C. § 7407.

196.    Erotida Harden's, Michael Harden's, Aida Cortes', Yahaira Claudio's, Tamika Robenson's, and Natasha Williams' continual and repeated fraudulent or deceptive conduct in connection with the preparation of tax returns, including in training individuals to prepare false tax returns and in operating a tax preparation business where the preparation of false tax returns

flourishes, substantially interferes with the proper administration of the internal revenue laws and falls within 26 U.S.C. § 7407(b)(1)(D). Erotida Harden, Michael Harden, Aida Cortes, Yahaira Claudio, Tamika Robenson, and Natasha Williams thus are subject to an injunction under 26 U.S.C. § 7407.

197.    Erotida Harden, Michael Harden, Aida Cortes, Yahaira Claudio, Tamika Robenson, and Natasha Williams, and those acting in concert with them and at their direction, have continuously and repeatedly guaranteed refunds to customers and guaranteed the allowance of tax credits, including but not limited to the EITC. This conduct falls within 26 U.S.C. § 7407(b)(1)(C), and Erotida Harden, Michael Harden, Aida Cortes, Yahaira Claudio, Tamika Robenson, and Natasha Williams thus are subject to an injunction under 26 U.S.C. § 7407.

198.    If Erotida Harden, Michael Harden, Aida Cortes, Yahaira Claudio, Tamika Robenson, Natasha Williams, and Certified Taxes, LLC are not enjoined from all tax preparation, they and those acting in concert with them and at their direction are likely to continue to prepare and file false and fraudulent tax returns.

199.    Erotida Harden's, Michael Harden's, Aida Cortes', Yahaira Claudio's, Tamika Robenson's, Natasha Williams', and Certified Taxes, LLC's continual and repeated conduct subject to an injunction under 26 U.S.C. § 7407, including their continual and repeated fabrication of expenses and deductions, is so flagrantly illegal and so egregious that it demonstrates that a narrow injunction prohibiting only specific conduct would be insufficient to prevent Erotida Harden's, Michael Harden's, Aida Cortes', Yahaira Claudio's, Tamika Robenson's, Natasha Williams', and Certified Taxes, LLC's interference with the proper administration of the internal revenue laws. Accordingly, Erotida Harden, Michael Harden, Aida Cortes, Yahaira Claudio, Tamika Robenson, Natasha Williams, and Certified Taxes, LLC should

be permanently barred from acting as federal tax return preparers, and from owning, operating, managing, investing in, controlling, licensing, franchising, or working for a tax return preparation business.

## Count II
### Injunction under 26 U.S.C. § 7408

200.     Section 7408 of the Internal Revenue Code authorizes a district court to enjoin any person from engaging in conduct subject to penalty under either 26 U.S.C. § 6700 or § 6701 if injunctive relief is appropriate to prevent recurrence of such conduct.

201.     Section 6701(a) of the Internal Revenue Code penalizes any person who aids or assists in, procures, or advises with respect to the preparation or presentation of a federal tax return, refund claim, or other document knowing (or having reason to believe) that it will be used in connection with any material matter arising under the internal revenue laws and knowing that if it is so used it will result in an understatement of another person's tax liability. Under 26 U.S.C. § 6701(c)(1), the term "procures" includes "ordering (or otherwise causing) a subordinate to do an act," as well as "knowing of, and not attempting to prevent, participation by a subordinate in an act."

202.     Erotida Harden, Michael Harden, Aida Cortes, Yahaira Claudio, Tamika Robenson, Natasha Williams, and Certified Taxes, LLC, through the actions detailed above in paragraphs 5 through 185, caused the presentation and preparation of false, fraudulent, and abusive tax returns and other documents. Erotida Harden, Michael Harden, Aida Cortes, Yahaira Claudio, Tamika Robenson, and Natasha Williams prepare, assist, and/or advise with respect to the presentation and preparation of federal tax returns for customers that they know will understate their correct tax liabilities, because Erotida Harden, Michael Harden, Aida Cortes,

64

Yahaira Claudio, Tamika Robenson, and Natasha Williams knowingly prepare, assist, and/or advise with respect to the presentation and preparation of returns claiming bogus expenses and deductions. Erotida Harden, Michael Harden, Aida Cortes, Yahaira Claudio, Tamika Robenson, and Natasha Williams procured and assisted the preparation of false and fraudulent tax returns by filing and encouraging the preparation and filing of tax returns they knew were false or fraudulent, and by employing, training, and supervising tax return preparers engaging in tax fraud. Erotida Harden, Michael Harden, Aida Cortes, Yahaira Claudio, Tamika Robenson, and Natasha Williams have thus engaged in conduct subject to a penalty under 26 U.S.C. § 6701.

203.    Erotida Harden, Michael Harden, Aida Cortes, Yahaira Claudio, Tamika Robenson, and Natasha Williams are likely to continue violating the law absent an injunction. Tax return preparation is a significant, if not primary, source of revenue for Erotida Harden, Michael Harden, Aida Cortes, Yahaira Claudio, Tamika Robenson, and Natasha Williams. To maximize that income, Erotida Harden, Michael Harden, Aida Cortes, Yahaira Claudio, Tamika Robenson, and Natasha Williams prepare, and instruct and direct tax return preparers and employees to prepare, false or fraudulent returns. That conduct, in turn, gives Erotida Harden, Michael Harden, Aida Cortes, Yahaira Claudio, Tamika Robenson, and Natasha Williams a competitive edge over law-abiding preparers. It also provides a means for Erotida Harden, Michael Harden, Aida Cortes, Yahaira Claudio, Tamika Robenson, and Natasha Williams to further exploit their customers by charging them unconscionably high fees, while Erotida Harden's, Michael Harden's, Aida Cortes', Yahaira Claudio's, Tamika Robenson's, and Natasha Williams' false or fraudulent tax return preparation simultaneously and callously exposes their customers to possible civil and criminal liability.

204.    If the Court does not enjoin Erotida Harden, Michael Harden, Aida Cortes,

Yahaira Claudio, Tamika Robenson, Natasha Williams, and Certified Taxes, LLC, they are

likely to continue to engage in conduct subject to penalty under 26 U.S.C. § 6701. The

preparation of tax returns claiming improper expenses and deductions by Erotida Harden,

Michael Harden, Aida Cortes, Yahaira Claudio, Tamika Robenson, and Natasha Williams, and

those acting in concert with them and at their direction, is widespread over many customers and

tax years. Injunctive relief is therefore appropriate under 26 U.S.C. § 7408.

### Count III
### Injunction under 26 U.S.C. § 7402(a)
### Necessary to Enforce the Internal Revenue Laws

205.    Section 7402 of the Internal Revenue Code authorizes a district court to issue

injunctions as may be necessary or appropriate for the enforcement of the internal revenue laws.

206.    Erotida Harden, Michael Harden, Aida Cortes, Yahaira Claudio, Tamika

Robenson, Natasha Williams, and Certified Taxes, LLC, through the actions described above in

paragraphs 5 through 185, including, but not limited to, intentionally understating their

customers' tax liabilities and charging unconscionable and undisclosed fees for the preparation

of federal tax returns that intentionally understate their customers' tax liabilities, have engaged in

conduct that substantially interferes with the enforcement of the internal revenue laws.

207.    Unless enjoined, Erotida Harden, Michael Harden, Aida Cortes, Yahaira Claudio,

Tamika Robenson, Natasha Williams, and Certified Taxes, LLC, and those acting in concert with

them and at their direction, are likely to continue to engage in such improper conduct and

interfere with the enforcement of the internal revenue laws. If Erotida Harden, Michael Harden,

Aida Cortes, Yahaira Claudio, Tamika Robenson, Natasha Williams, and Certified Taxes, LLC

are not enjoined from engaging in fraudulent and deceptive conduct, the United States will suffer

irreparable injury by providing federal income tax refunds to individuals not entitled to receive them.

208.　While the United States will suffer irreparable injury if Erotida Harden, Michael Harden, Aida Cortes, Yahaira Claudio, Tamika Robenson, Natasha Williams, and Certified Taxes, LLC are not enjoined, the Defendants will not be harmed by being compelled to obey the law.

209.　Enjoining Erotida Harden, Michael Harden, Aida Cortes, Yahaira Claudio, Tamika Robenson, Natasha Williams, and Certified Taxes, LLC is in the public interest because an injunction, backed by the Court's contempt powers if needed, will stop the Defendants' illegal conduct and the harm it causes the United States and the Defendants' customers.

210.　The Court should impose injunctive relief under 26 U.S.C. § 7402(a).

**Count IV**
**Disgorgement under 26 U.S.C. § 7402(a)**
**Necessary to Enforce the Internal Revenue Laws**

211.　Section 7402 of the Internal Revenue Code authorizes a district court to issue orders, judgments, and decrees as may be necessary or appropriate for the enforcement of the internal revenue laws.

212.　Erotida Harden's, Michael Harden's, Aida Cortes', Yahaira Claudio's, Tamika Robenson's, Natasha Williams', and Certified Taxes, LLC's conduct, described above in paragraphs 5 through 185, substantially interferes with the enforcement of the internal revenue laws and has caused the United States to issue tax refunds to individuals not entitled to receive them. Erotida Harden, Michael Harden, Aida Cortes, Yahaira Claudio, Tamika Robenson, Natasha Williams, and Certified Taxes, LLC have unjustly profited at the expense of the United States by subtracting their exorbitant fees from those refunds.

213.    Erotida Harden, Michael Harden, Aida Cortes, Yahaira Claudio, Tamika Robenson, Natasha Williams, and Certified Taxes, LLC are not entitled to these ill-gotten gains. But for the Defendants' conduct, these bogus refunds would not have been issued.

214.    The Court should enter an order under 26 U.S.C. § 7402(a) requiring Erotida Harden, Michael Harden, Aida Cortes, Yahaira Claudio, Tamika Robenson, Natasha Williams, and Certified Taxes, LLC to disgorge to the United States the gross receipts (in the form of fees subtracted from customers' tax refunds) that Erotida Harden, Michael Harden, Aida Cortes, Yahaira Claudio, Tamika Robenson, Natasha Williams, and Certified Taxes, LLC received for the preparation of federal tax returns making false and/or fraudulent claims.

WHEREFORE, the United States of America prays for the following:

A.    That the Court find that Erotida Harden, Michael Harden, Aida Cortes, Yahaira Claudio, Tamika Robenson, Natasha Williams, and Certified Taxes, LLC have continually and repeatedly engaged in conduct subject to penalty under 26 U.S.C. §§ 6694 and 6695, continually and repeatedly engaged in other fraudulent or deceptive conduct that substantially interferes with the administration of the tax laws, and that a narrower injunction prohibiting only this specific misconduct would be insufficient;

B.    That the Court, pursuant to 26 U.S.C. § 7407, enter a permanent injunction prohibiting Erotida Harden, Michael Harden, Aida Cortes, Yahaira Claudio, Tamika Robenson, Natasha Williams, and Certified Taxes, LLC from acting as federal tax return preparers;

C.    That the Court find that Erotida Harden, Michael Harden, Aida Cortes, Yahaira Claudio, Tamika Robenson, Natasha Williams, and Certified Taxes, LLC have engaged in conduct subject to penalty under 26 U.S.C. § 6701, and that injunctive relief under 26 U.S.C. § 7408 is appropriate to prevent a recurrence of that conduct;

68

D.      That the Court find that Erotida Harden, Michael Harden, Aida Cortes, Yahaira Claudio, Tamika Robenson, Natasha Williams, and Certified Taxes, LLC have engaged in conduct that interferes with the enforcement of the internal revenue laws, and that injunctive relief is appropriate to prevent the recurrence of that conduct pursuant to the Court's inherent equity powers and 26 U.S.C. § 7402(a);

E.      That the Court, pursuant to 26 U.S.C. §§ 7402(a), 7407, and 7408, enter a permanent injunction prohibiting Erotida Harden, Michael Harden, Aida Cortes, Yahaira Claudio, Tamika Robenson, Natasha Williams, and Certified Taxes, LLC, and all those in active concert or participation with them, from:

(1)      acting as federal tax return preparers or requesting, assisting in, or directing the preparation or filing of federal tax returns, amended returns, or other related documents or forms for any person or entity other than themselves;

(2)      preparing or assisting in preparing federal tax returns that they know or reasonably should know would result in an understatement of tax liability or the overstatement of federal tax refund(s) as penalized by 26 U.S.C. § 6694;

(3)      owning, operating, managing, working in, investing in, providing capital or loans to, receiving fees or remuneration from, controlling, licensing, consulting with, or franchising a tax return preparation business;

(4)      training, instructing, teaching, and creating or providing cheat sheets, memoranda, directions, instructions, or manuals, pertaining to the preparation of federal tax returns;

(5)      maintaining, assigning, holding, using, or obtaining a Preparer Tax Identification Number (PTIN) or an Electronic Filing Identification Number (EFIN);

(6)      engaging in any other activity subject to penalty under 26 U.S.C. §§ 6694, 6695, 6701, or any other penalty provision in the Internal Revenue Code; and

(7)     engaging in any conduct that substantially interferes with the proper administration and enforcement of the internal revenue laws.

F.      That the Court, pursuant to 26 U.S.C. §§ 7402(a) and 7407, enter an order requiring Erotida Harden, Michael Harden, Aida Cortes, Yahaira Claudio, Tamika Robenson, Natasha Williams, and Certified Taxes, LLC to immediately and permanently close all tax return preparation stores that they own directly or through any other entity, and whether those stores do business as Certified Taxes or under any other name;

G.      That the Court, pursuant to 26 U.S.C. §§ 7402(a) and 7407, enter an order appointing a receiver to sell all of the hard assets, such as computers (after any and all taxpayer information has been removed), electronics, and furniture, for all tax return preparation stores that Erotida Harden, Michael Harden, Aida Cortes, Yahaira Claudio, Tamika Robenson, Natasha Williams, and Certified Taxes, LLC own directly or through any other entity, and whether those stores do business as Certified Taxes or under any other name;

H.      That the Court, pursuant to 26 U.S.C. § 7402(a), enter an order prohibiting Erotida Harden, Michael Harden, Aida Cortes, Yahaira Claudio, Tamika Robenson, Natasha Williams, and Certified Taxes, LLC, directly or through any other entity, from assigning, transferring, or selling any franchise agreement, independent contractor agreement, or employment contract related to Erotida Harden, Michael Harden, Aida Cortes, Yahaira Claudio, Tamika Robenson, Natasha Williams, and Certified Taxes, LLC, or any other tax return preparation business to which they or any entity under their control is a party;

I.      That the Court, pursuant to 26 U.S.C. § 7402(a), enter an order barring Erotida Harden, Michael Harden, Aida Cortes, Yahaira Claudio, Tamika Robenson, Natasha Williams, and Certified Taxes, LLC, directly or through any other entity, from: (1) selling to any individual

70

or entity a list of customers, or any other customer information, for whom Erotida Harden, Michael Harden, Aida Cortes, Yahaira Claudio, Tamika Robenson, Natasha Williams, and Certified Taxes, LLC and any other business or name (including but not limited to Certified Taxes) through which they, or those acting at their direction, have at any time since 2013 prepared a tax return; (2) assigning, disseminating, providing, or giving to any current or former franchisee, General Sales Manager, District Sales Manager, manager, tax return preparer, employee, or independent contractor of Erotida Harden, Michael Harden, Aida Cortes, Yahaira Claudio, Tamika Robenson, Natasha Williams, and Certified Taxes, LLC or any other business or entity through which Erotida Harden, Michael Harden, Aida Cortes, Yahaira Claudio, Tamika Robenson, and Natasha Williams prepares tax returns or owns or franchises a tax return preparation business, a list of customers or any other customer information for customers for whom Erotida Harden, Michael Harden, Aida Cortes, Yahaira Claudio, Tamika Robenson, Natasha Williams, and Certified Taxes, LLC, and any other business or name (including but not limited to Certified Taxes) through which Erotida Harden, Michael Harden, Aida Cortes, Yahaira Claudio, Tamika Robenson, and Natasha Williams, or those acting at their direction, have at any time since 2013 prepared a tax return; and (3) selling to any individual or entity any proprietary information pertaining to Erotida Harden, Michael Harden, Aida Cortes, Yahaira Claudio, Tamika Robenson, Natasha Williams, and Certified Taxes, LLC, and any other business or name (including but not limited to Certified Taxes) through which Erotida Harden, Michael Harden, Aida Cortes, Yahaira Claudio, Tamika Robenson, and Natasha Williams, or those acting at their direction, have at any time since 2013 prepared a tax return;

J.     That the Court, pursuant to 26 U.S.C. § 7402, enter an order requiring Erotida Harden, Michael Harden, Aida Cortes, Yahaira Claudio, Tamika Robenson, Natasha Williams,

and Certified Taxes, LLC to disgorge to the United States the gross receipts (the amount of

which is to be determined by the Court) that Erotida Harden, Michael Harden, Aida Cortes,

Yahaira Claudio, Tamika Robenson, Natasha Williams, and Certified Taxes, LLC received (in

the form of fees subtracted from customers' tax refunds) for the preparation of tax returns that

make or report grossly incompetent, negligent, reckless, and/or fraudulent claims, deductions,

credits, income, expenses, or other information that results in the understatement of taxes,

prepared since 2013 by Erotida Harden, Michael Harden, Aida Cortes, Yahaira Claudio, Tamika

Robenson, Natasha Williams, and Certified Taxes, LLC, and at any tax preparation store

franchised, owned, or managed by Erotida Harden, Michael Harden, Aida Cortes, Yahaira

Claudio, Tamika Robenson, Natasha Williams, and Certified Taxes, LLC;

K.      That the Court, pursuant to 26 U.S.C. §§ 7402(a) and 7407, enter an order

requiring Erotida Harden, Michael Harden, Aida Cortes, Yahaira Claudio, Tamika Robenson,

Natasha Williams, and Certified Taxes, LLC to contact, within 30 days of the Court's order, by

United States mail and, if an e-mail address is known, by e-mail, all persons for whom Erotida

Harden, Michael Harden, Aida Cortes, Yahaira Claudio, Tamika Robenson, Natasha Williams,

and Certified Taxes, LLC, and their managers, employees, and tax return preparers (including

but not limited to those doing business under the name Certified Taxes) prepared federal tax

returns or claims for a refund from 2013 and continuing through this litigation to inform them of

the permanent injunction entered against them, including sending a copy of the order of

permanent injunction but not enclosing any other documents or enclosures unless agreed to by

counsel for the United States or approved by the Court;

L.      That the Court, pursuant to 26 U.S.C. §§ 7402(a), 7407, and 7408, enter an order

requiring Erotida Harden, Michael Harden, Aida Cortes, Yahaira Claudio, Tamika Robenson,

72

Natasha Williams, and Certified Taxes, LLC to produce to counsel for the United States, within 30 days of the Court's order, a list that identifies by name, social security number, address, e-mail address, and telephone number and tax period(s) all persons for whom Erotida Harden, Michael Harden, Aida Cortes, Yahaira Claudio, Tamika Robenson, Natasha Williams, and Certified Taxes, LLC, and their managers, employees, and tax return preparers (including but not limited to those doing business under the name Certified Taxes) prepared federal tax returns or claims for a refund since 2013;

M.      That the Court, pursuant to 26 U.S.C. §§ 7402(a), 7407, and 7408, enter an order requiring Erotida Harden, Michael Harden, Aida Cortes, Yahaira Claudio, Tamika Robenson, Natasha Williams, and Certified Taxes, LLC to produce to counsel for the United States, within 30 days of the Court's order, a list that identifies by name, address, e-mail address, and telephone number all principals, officers, managers, franchisees, employees, and independent contractors of Erotida Harden, Michael Harden, Aida Cortes, Yahaira Claudio, Tamika Robenson, Natasha Williams, and Certified Taxes, LLC since 2013;

N.      That the Court, pursuant to 26 U.S.C. §§ 7402(a), 7407, and 7408, enter an injunction requiring Erotida Harden, Michael Harden, Aida Cortes, Yahaira Claudio, Tamika Robenson, Natasha Williams, and Certified Taxes, LLC to provide a copy of the Court's order to all principals, officers, managers, franchisees, employees, and independent contractors of Erotida Harden, Michael Harden, Aida Cortes, Yahaira Claudio, Tamika Robenson, Natasha Williams, and Certified Taxes, LLC (from 2013 to the present) within 15 days of the Court's order, and provide to counsel for the United States within 30 days a signed and dated acknowledgment of receipt of the Court's order for each person whom Erotida Harden, Michael Harden, Aida Cortes,

Yahaira Claudio, Tamika Robenson, Natasha Williams, and Certified Taxes, LLC provided a copy of the Court's order;

O.    That the Court retain jurisdiction over Erotida Harden, Michael Harden, Aida Cortes, Yahaira Claudio, Tamika Robenson, Natasha Williams, and Certified Taxes, LLC and over this action to enforce any permanent injunction entered against them;

P.    That the United States be entitled to conduct discovery to monitor Erotida Harden's, Michael Harden's, Aida Cortes', Yahaira Claudio's, Tamika Robenson's, Natasha Williams', and Certified Taxes, LLC's compliance with the terms of any permanent injunction entered against them; and

Q.    That the Court grant the United States such other and further relief, including costs, as is just and reasonable.

DATED: December 14, 2018             MARIA CHAPA LOPEZ
                                     United States Attorney

                                     RICHARD E. ZUCKERMAN
                                     Principal Deputy Assistant Attorney General


                                     DANIEL A. APPLEGATE
                                     ALISON A. YEWDELL
                                     JARED S. WIESNER
                                     SAMUEL P. ROBINS
                                     Trial Attorneys, Tax Division
                                     U.S. Department of Justice
                                     P.O. Box 7238, Ben Franklin Station
                                     Washington, D.C.  20044
                                     Telephone: (202) 353-8180
                                     Fax: (202) 514-6770
                                     daniel.a.applegate@usdoj.gov

74

JS 44 (Rev. 06/17)

# CIVIL COVER SHEET

The JS 44 civil cover sheet and the information contained herein neither replace nor supplement the filing and service of pleadings or other papers as required by law, except as provided by local rules of court. This form, approved by the Judicial Conference of the United States in September 1974, is required for the use of the Clerk of Court for the purpose of initiating the civil docket sheet. *(SEE INSTRUCTIONS ON NEXT PAGE OF THIS FORM.)*

## I. (a) PLAINTIFFS

UNITED STATES OF AMERICA

**DEFENDANTS**

EROTIDA HARDEN; MICHAEL HARDEN; AIDA CORTES; YAHAIRA CLAUDIO;TAMIKA ROBENSON; NATASHA WILLIAMS; and CERTIFIED TAXES, LLC

**(b)** County of Residence of First Listed Plaintiff _____
*(EXCEPT IN U.S. PLAINTIFF CASES)*

County of Residence of First Listed Defendant   Osceola
*(IN U.S. PLAINTIFF CASES ONLY)*

NOTE:   IN LAND CONDEMNATION CASES, USE THE LOCATION OF THE TRACT OF LAND INVOLVED.

**(c)** Attorneys *(Firm Name, Address, and Telephone Number)*
Daniel Applegate, U.S. Dept. of Justice, Tax Div., (202) 353-8180
P.O. Box 7238 Ben Franklin Stn., Washington, D.C. 20044

Attorneys *(If Known)*

## II. BASIS OF JURISDICTION *(Place an "X" in One Box Only)*

☒ 1  U.S. Government
      Plaintiff

☐ 3  Federal Question
      *(U.S. Government Not a Party)*

☐ 2  U.S. Government
      Defendant

☐ 4  Diversity
      *(Indicate Citizenship of Parties in Item III)*

## III. CITIZENSHIP OF PRINCIPAL PARTIES *(Place an "X" in One Box for Plaintiff*
*(For Diversity Cases Only)* *and One Box for Defendant)*

| | PTF | DEF | | PTF | DEF |
|---|---|---|---|---|---|
| Citizen of This State | ☐ 1 | ☐ 1 | Incorporated *or* Principal Place of Business In This State | ☐ 4 | ☐ 4 |
| Citizen of Another State | ☐ 2 | ☐ 2 | Incorporated *and* Principal Place of Business In Another State | ☐ 5 | ☐ 5 |
| Citizen or Subject of a Foreign Country | ☐ 3 | ☐ 3 | Foreign Nation | ☐ 6 | ☐ 6 |

## IV. NATURE OF SUIT *(Place an "X" in One Box Only)*

Click here for: Nature of Suit Code Descriptions.

| CONTRACT | TORTS | FORFEITURE/PENALTY | BANKRUPTCY | OTHER STATUTES |
|---|---|---|---|---|
| ☐ 110 Insurance | **PERSONAL INJURY** / **PERSONAL INJURY** | ☐ 625 Drug Related Seizure of Property 21 USC 881 | ☐ 422 Appeal 28 USC 158 | ☐ 375 False Claims Act |
| ☐ 120 Marine | ☐ 310 Airplane / ☐ 365 Personal Injury - | ☐ 690 Other | ☐ 423 Withdrawal | ☐ 376 Qui Tam (31 USC |
| ☐ 130 Miller Act | ☐ 315 Airplane Product       Product Liability | | 28 USC 157 | 3729(a)) |
| ☐ 140 Negotiable Instrument | Liability / ☐ 367 Health Care/ | | | ☐ 400 State Reapportionment |
| ☐ 150 Recovery of Overpayment | ☐ 320 Assault, Libel &       Pharmaceutical | | **PROPERTY RIGHTS** | ☐ 410 Antitrust |
| & Enforcement of Judgment | Slander       Personal Injury | | ☐ 820 Copyrights | ☐ 430 Banks and Banking |
| ☐ 151 Medicare Act | ☐ 330 Federal Employers'       Product Liability | | ☐ 830 Patent | ☐ 450 Commerce |
| ☐ 152 Recovery of Defaulted | Liability / ☐ 368 Asbestos Personal | | ☐ 835 Patent - Abbreviated | ☐ 460 Deportation |
| Student Loans | ☐ 340 Marine       Injury Product | | New Drug Application | ☐ 470 Racketeer Influenced and |
| (Excludes Veterans) | ☐ 345 Marine Product       Liability | | ☐ 840 Trademark | Corrupt Organizations |
| ☐ 153 Recovery of Overpayment | Liability / **PERSONAL PROPERTY** | **LABOR** | **SOCIAL SECURITY** | ☐ 480 Consumer Credit |
| of Veteran's Benefits | ☐ 350 Motor Vehicle / ☐ 370 Other Fraud | ☐ 710 Fair Labor Standards | ☐ 861 HIA (1395ff) | ☐ 490 Cable/Sat TV |
| ☐ 160 Stockholders' Suits | ☐ 355 Motor Vehicle / ☐ 371 Truth in Lending | Act | ☐ 862 Black Lung (923) | ☐ 850 Securities/Commodities/ |
| ☐ 190 Other Contract | Product Liability / ☐ 380 Other Personal | ☐ 720 Labor/Management | ☐ 863 DIWC/DIWW (405(g)) | Exchange |
| ☐ 195 Contract Product Liability | ☐ 360 Other Personal       Property Damage | Relations | ☐ 864 SSID Title XVI | ☐ 890 Other Statutory Actions |
| ☐ 196 Franchise | Injury / ☐ 385 Property Damage | ☐ 740 Railway Labor Act | ☐ 865 RSI (405(g)) | ☐ 891 Agricultural Acts |
| | ☐ 362 Personal Injury -       Product Liability | ☐ 751 Family and Medical | | ☐ 893 Environmental Matters |
| | Medical Malpractice | Leave Act | | ☐ 895 Freedom of Information |
| **REAL PROPERTY** | **CIVIL RIGHTS** / **PRISONER PETITIONS** | ☐ 790 Other Labor Litigation | **FEDERAL TAX SUITS** | Act |
| ☐ 210 Land Condemnation | ☐ 440 Other Civil Rights / **Habeas Corpus:** | ☐ 791 Employee Retirement | ☒ 870 Taxes (U.S. Plaintiff | ☐ 896 Arbitration |
| ☐ 220 Foreclosure | ☐ 441 Voting / ☐ 463 Alien Detainee | Income Security Act | or Defendant) | ☐ 899 Administrative Procedure |
| ☐ 230 Rent Lease & Ejectment | ☐ 442 Employment / ☐ 510 Motions to Vacate | | ☐ 871 IRS—Third Party | Act/Review or Appeal of |
| ☐ 240 Torts to Land | ☐ 443 Housing/       Sentence | | 26 USC 7609 | Agency Decision |
| ☐ 245 Tort Product Liability | Accommodations / ☐ 530 General | | | ☐ 950 Constitutionality of |
| ☐ 290 All Other Real Property | ☐ 445 Amer. w/Disabilities - / ☐ 535 Death Penalty | **IMMIGRATION** | | State Statutes |
| | Employment / **Other:** | ☐ 462 Naturalization Application | | |
| | ☐ 446 Amer. w/Disabilities - / ☐ 540 Mandamus & Other | ☐ 465 Other Immigration | | |
| | Other / ☐ 550 Civil Rights | Actions | | |
| | ☐ 448 Education / ☐ 555 Prison Condition | | | |
| | ☐ 560 Civil Detainee - | | | |
| | Conditions of | | | |
| | Confinement | | | |

## V. ORIGIN *(Place an "X" in One Box Only)*

☒ 1  Original
      Proceeding

☐ 2  Removed from
      State Court

☐ 3  Remanded from
      Appellate Court

☐ 4  Reinstated or
      Reopened

☐ 5  Transferred from
      Another District
      *(specify)*

☐ 6  Multidistrict
      Litigation -
      Transfer

☐ 8  Multidistrict
      Litigation -
      Direct File

## VI. CAUSE OF ACTION

Cite the U.S. Civil Statute under which you are filing *(Do not cite jurisdictional statutes unless diversity):*
26 U.S.C. sections 7402(a), 7407, and 7408

Brief description of cause:
Suit for permanent injunction barring defendants from preparing tax returns and disgorgement of ill-gotten gains

## VII. REQUESTED IN COMPLAINT:

☐ CHECK IF THIS IS A CLASS ACTION UNDER RULE 23, F.R.Cv.P.

DEMAND $ _____

CHECK YES only if demanded in complaint:
JURY DEMAND:   ☐ Yes   ☒ No

## VIII. RELATED CASE(S) IF ANY

*(See instructions):*
JUDGE _____   DOCKET NUMBER _____

DATE
12/14/2018

SIGNATURE OF ATTORNEY OF RECORD

**FOR OFFICE USE ONLY**

RECEIPT # _____   AMOUNT _____   APPLYING IFP _____   JUDGE _____   MAG. JUDGE _____